## THE ILLINOIS STEEL COMPANY

*v.*

### ANTONINA OSTROWSKI, Admx.

*Opinion filed February 21, 1902.*

1. TRIAL—*when proof of negligence is sufficiently strong to go to jury.* Proof that a bolt used by the defendant company to hold in place a clamp upon the projecting arm of a derrick used for hoisting ore from the hold of a vessel was allowed to become old, rusty and half broken off, so the force and weight of the heavy machinery it held caused it to break, thus allowing a heavy nut screwed upon the end of such bolt to drop and injure an employee working in the hold of the vessel, who was himself guilty of no negligence, raises a question as to the care of the defendant in keeping such bolt and machinery in a safe condition and in having the same inspected, which is properly left to the jury.

2. PLEADING—*what is a sufficient allegation of negligence.* Allegations, in substance, in a declaration, that the defendant allowed its machinery, the breaking of which caused the injury sued for, to become old and worn out and corroded with rust and so weak and unsubstantial that it was unfit for use in the business, and that such machinery was not properly inspected, constitute a sufficient pleading of the defects in such machinery and of the defendant's knowledge thereof.

3. SAME—*declaration need not state, in terms, that the defendant was guilty of negligence.* An explicit allegation, in terms, that the defendant employer was guilty of negligence with reference to the safety of its machinery is not necessary, provided facts are stated which raise a duty and show a failure to perform that duty and a consequent injury to plaintiff's intestate, since to these facts the law will attach the charge of negligence.

4. SAME—*what is a sufficient allegation of damages.* An averment that by reason of the injury plaintiff's intestate was prevented from working at any occupation and from earning his living from the time of his injury until his death is sufficient to cover and include work at his usual and ordinary business, and under such averment plaintiff may prove what the ordinary business of deceased was and his earning capacity therein.

5. EVIDENCE—*sufficiency of proof of the earning capacity of deceased.* Proof of the rate of earnings of a plaintiff in a business wherein he has been two years continuously employed by the same company, sufficiently shows the fair general measure of his earning capacity, though it might be different if the employment had been shown to be of short duration.

6. SAME—*when proof of number and ages of the intestate's children will not reverse.* Proof, over objection, by an administratrix, in a suit for personal injuries to her intestate, of the number and ages of the children left by the deceased, is not reversible error, where not coupled with proof that such children were dependent upon deceased or that he did in fact support them, and where the court, by instruction, explicitly states the correct measure of damages.

*Illinois Steel Co.* v. *Ostrowski,* 93 Ill. App. 57, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

This is an appeal from the Appellate Court for the First District affirming a judgment of the circuit court of Cook county. In the Appellate Court Mr. Justice ADAMS, in delivering the opinion, made a statement of the case. Upon examination we regard it as fair and sufficiently full, and adopt it in this court:

"June 10, 1897, John Ostrowski, appellee's intestate, was in appellant's employ, and was working in the hold of a vessel assisting in the unloading of iron ore therefrom, when a piece of iron about four inches wide by four inches thick, and about three inches long, to which a nut was attached, fell on his right hand from a hoisting apparatus about thirty feet above him, which was being used by appellant in unloading iron ore from the vessel, and injured him. John Ostrowski was drowned February 16, 1898. Appellee recovered judgment for $1000, to reverse which this appeal is.

"Appellee's counsel admit that the following description of the hoisting apparatus, contained in the brief of appellant's counsel, and the manner of his injury, is substantially correct: 'The boat was moored in a slip alongside a wharf. The machinery used for unloading the ore from the vessel was known as a 'Brown hoist.' This hoist consisted of two timbers running parallel with each other

from the edge of the dock back at right angles to the
margin of the dock several hundred feet on to the land.
These timbers were supported on iron structures about
thirty feet from the surface of the ground. The distance
between these two timbers was about a foot or a foot and
a half. From these two timbers, at the margin or edge of
the dock, extended two other timbers similar in size and
construction, out over the deck of the vessel, The outer
ends of these two latter timbers could be moved up and
down. The inner ends of these timbers were joined to
the fixed timbers upon the land by a hinge, right above
the edge of the dock. These timbers, extending from the
dock out over the vessel, were called the 'apron.' When a
vessel is moored at the dock the apron is adjusted in the
proper position above the hatch of the vessel. On these
two timbers of the hoist there were two different devices,
known, respectively, as a 'carriage' and a 'stopper.' The
carriage is a sort of four-wheel car. Two of the wheels
run on each timber of the hoist and the body of the car
hangs below the wheels, between the timbers of the hoist.
The stopper is a device located near the outer end of the
apron, which limits the movement of the carriage in the
direction of the outer end of the apron. When the car-
riage moves out to the stopper, the stopper causes the
tub attached to the carriage to be released from the car-
riage and permits it to be lowered into the hatch of the
boat. The tub into which the ore is loaded has a bail.
A hook attached to a block or sheave hooks into the bail
of the tub. The axle running through the wheel in the
block or sheave extends about three inches outside of
the side of the block or sheave. A cable runs around the
wheel in the block or sheave. By means of this cable
the block or sheave, with the tub hooked to it, may be
drawn up to the carriage. When it reaches the carriage,
a device in the lower part of the carriage hooks under
the axle, which extends beyond the side of the block or
sheave, and then the carriage is moved on the apron and

hoist to the proper place and the tub is dumped. After the tub is dumped the carriage is moved back to a point over the hatch of the boat. At this point it strikes the stopper, which releases the block or sheave from the carriage, and the block or sheave, with the bucket attached, descends into the hatch of the boat. At the time Ostrowski was hurt he was in the hold of the boat and was hooking a loaded tub on to the hook of the block or sheave. A bolt in part of the stopper broke, and one end, with the nut on it, fell and struck him on the hand.'

"The bolt which broke was part of the stopper, and its location was as follows: The timbers of the apron on which the wheels of the carriage rested were a foot or a foot and one-half apart. On top of these timbers, and extending from one to the other, was an iron plate. A similar plate extended from one timber to the other, on the lower side of the timbers. Through the center of the iron plate and between the timbers there was a bolt, at the lower end of which was a large nut, which, when screwed up, clamped the upper and lower sides of the timbers, thus holding the stopper firmly in place. There were two other iron plates which formed a part of the stopper, which extended perpendicularly down between the timbers of the apron, which latter plates were three or four inches apart, and through them the plates first mentioned passed. The bolt passed through the perpendicular plates. The stopper could be moved from place to place on the apron, to do which it was necessary to loosen the bolt by unscrewing the nut. The bucket and carriage are both made of iron. A witness testified that the former was three feet across and three feet high, and that he thought it weighed three tons, and that the carriage was as high as the witness and about four feet long. When the carriage ran against the stopper, the bucket which it carried was empty.

"The evidence with regard to the breaking of the bolt was as follows: Steeny Pawlowski, a fellow-workman

of the deceased, testified that the bolt broke right in the thread—right close to the big nut; that half of the break was old and half of it was new, and that the old half was all rust. Peter Albrecht, another fellow-workman of the deceased, testified that the bolt that fell down had threads in it like a screw, and that the break occurred right across the bolt where the threads were.

"Appellant's counsel introduced no evidence, except a photograph showing the vessel and hoisting apparatus. At the conclusion of the evidence appellant's counsel moved the court to exclude the evidence for the plaintiff and to instruct the jury to find the defendant not guilty, and presented an instruction to that effect, which motion the court overruled."

The suit was begun by John Ostrowski, and pending it and before trial he was drowned, and appellee, his widow, was appointed administratrix of his estate and was substituted as plaintiff.

KEMPER K. KNAPP, for appellant:

The duty of the master is merely to exercise ordinary and reasonable care to maintain a machine about which the servant is set to work, in safe condition. *Camp Point Manf. Co.* v. *Ballou,* 71 Ill. App. 417; *Railroad Co.* v. *Kerr,* 148 Ill. 605; *Weber Wagon Co.* v. *Kehl,* 139 id. 657; *Railroad Co.* v. *Sanders,* 166 id. 278; *Railroad Co.* v. *Selsor,* 55 Ill. App. 685; *Railway Co.* v. *Armstrong,* 62 id. 228; *Austin Manf. Co.* v. *Johnson,* 89 Fed. Rep. 677.

The law presumes that the master has performed his duty to his servant, and this presumption must be overcome by evidence in the case. *Railroad Co.* v. *Barslow,* 55 Ill. App. 301; *Railway Co.* v. *Armstrong,* 62 id. 228; Wood on Railways, 376; *Viles* v. *Stantesky,* 83 Ill. App. 398; *Johnson* v. *Railway Co.* 36 W. Va. 73.

In order to show negligence on the part of the master the evidence must show that the defect complained of was either known to the master, or was of such a char-

acter that had the master exercised reasonable and ordinary care it would have been known to him. *Colfax Coal Co.* v. *Johnson*, 52 Ill. App. 383; *Sack* v. *Dolese*, 137 Ill. 129; *Packing Co.* v. *Hightower*, 92 id. 139; *Meyers* v. *Steel Barge Co.* 64 Ill. App. 187.

The case ought to be reversed because the evidence does not show any negligence. If reversed for that reason it ought not to be remanded. *Siddall* v. *Jansen*, 143 Ill. 537; *Senger* v. *Harvard*, 147 id. 304; *Neer* v. *Railroad Co.* 151 id. 141; *Hately* v. *Pike*, 162 id. 241.

The plaintiff is required to prove, by facts and circumstances surrounding the case, that the defendant has been guilty of negligence. *Railroad Co.* v. *Barslow*, 55 Ill. App. 203; *Railway Co.* v. *Armstrong*, 62 id. 228; Wood on Railways, 376; *Johnson* v. *Railroad Co.* 36 W. Va. 73; *Viles* v. *Stantesky*, 83 Ill. App. 398.

Whenever a declaration fails to state an essential element necessary to the statement of the cause of action the verdict cannot be sustained. *Eilenberger* v. *Nelson*, 64 Ill. App. 277; *Railroad Co.* v. *Clausen*, 173 Ill. 100; *Funk* v. *Piper*, 50 Ill. App. 163; *Thamm* v. *Lahey*, 59 id. 73; *Railway Co.* v. *Coit*, 50 id. 640; *Hinchliff* v. *Rudnick*, 70 id. 148; *Angus* v. *Lee*, 40 id. 304.

The allegation of a duty in general terms, without the statement of facts, is mere surplusage. The court has no right to look to such an allegation for any purpose whatever. *Railroad Co.* v. *Clausen*, 173 Ill. 100; *Thamm* v. *Lahey*, 59 Ill. App. 73; *Railway Co.* v. *Coit*, 50 id. 640; *Angus* v. *Lee*, 40 id. 304; *Hinchliff* v. *Rudnick*, 70 id. 148.

DOUTHART & BRENDECKE, for appellee:

The law will imply and infer notice of any defect which by the use of ordinary care might have been known to the master. *Consolidated Coal Co.* v. *Haenni*, 146 Ill. 614.

If there was any disregard of duty it was necessarily negligent, whether so averred in the declaration or not. Where facts are stated which in law raise a duty, and

the disregard of duty and consequent injury are properly averred, the count will be regarded as sufficient.    The pleader must state facts from which the law will raise a duty and show an omission of the duty and resulting injury, but when that is done an allegation that the act was negligent is unnecessary.    *Railroad Co.* v. *Hawthorn,* 147 Ill. 226; *Ayers* v. *Chicago,* 111 id. 406.

Mr. JUSTICE RICKS delivered the opinion of the court:

This case comes on appeal from the Appellate Court for the First District, affirming a judgment of the circuit court of Cook county, and the grounds of error insisted upon in this case are, that the evidence does not show any negligence on the part of the defendant; that the declaration states no cause of action, and that the court allowed improper evidence to be introduced upon the trial of the cause on the part of the plaintiff.    We are only authorized to consider the first ground sufficiently to pass upon the action of the trial court in refusing to direct a verdict for defendant (appellant) at the close of appellee's evidence.

The record discloses that appellant offered no evidence, and the whole case depended upon the evidence of appellee.    At the close of the evidence appellant requested the court to direct a verdict for it, which request and instruction the court refused.    Appellant then offered, and the court gave on its request, seven instructions.    Appellee offered no instructions.    If there was evidence in the record tending to establish the issues in behalf of plaintiff, an issue of fact was then presented which should have been presented to the jury, and we can not pass upon the sufficiency of the evidence.    *Lake Shore and Michigan Southern Railway Co.* v. *Richards,* 152 Ill. 59.

The evidence showed that a nut fell from the hoisting machinery and struck appellee's intestate on the hand, between the little and third fingers, crushing the bones of the hand and greatly lacerating it.    The nut in ques-

tion was about four inches square and three inches deep, and contained in it the screw of the bolt to which it was attached. This bolt was used to hold in place a clamp upon the projecting arm of a derrick used for hoisting ores from the holds of vessels. Hoisting was done by heavy iron machinery which acted automatically and was carried up and down this projecting arm, and a system of carriers that dumped the ores back on the bank of the river. The hoisting apparatus weighed between two and three tons and traveled on rollers. The projecting arm to which the bolt was attached served as a track, and the clamp which this bolt held in place was the stopper or break which stopped the hoisting apparatus as it came down this projecting arm. With such great weight as this hoisting apparatus normally had, the force of the strike or impact as it came to its place where it was to stop was such as required unusually heavy appliances. Boats were loaded every day or every other day, and this clamp, so held in place by the bolt that broke, was moved on this projecting arm, so that the hoisting apparatus and the tub attached to it could be brought to the proper or desired place over the hatch of the boat. The bolt that held this nut which struck plaintiff's intestate had to be loosened and tightened every time the clamp on the arm was moved. At the time of the injury this bolt broke just back of or above the nut where the threads began. The evidence showed that the bolt, at the place where it broke, had been broken half through at the time of the injury; that half of the break was a fresh break and half of it an old break,—so old that rust had formed between the severed parts. As the evidence showed that it was necessary to loosen and tighten this nut almost daily, and as it was the bolt that held this heavy and dangerous machinery as it swung down over the men who were working on the boat, we think, under the above facts, it became a question for the jury to determine whether appellant exercised reasonable care to

have and keep this bolt in safe condition, and whether, to that end, there were sufficiently frequent and proper inspections made of it. There is no claim that plaintiff's intestate was guilty of any negligence or did anything to contribute to his injury, and no evidence upon which to base any such claim.

The next insistence is, that the declaration did not state a cause of action: "(*a*) There is no allegation that the defendant knew that the piece of iron in question was weak and insufficient; (*b*) there is no allegation that it did not, at any time, use ordinary care, and ought to have known that the said piece of iron was weak and unsubstantial; (*c*) there is no general charge in the declaration even that the accident happened from or was caused by any negligence of the defendant." The declaration avers "that said piece of iron fell because the defendant had allowed the same to be old and worn out, corroded with rust, and so weak and unsubstantial that it was not fit to be used in and about said business; that it neglected to have the said piece of iron inspected, so that its defects might have been ascertained and provided against or supplied, so that the injury to the plaintiff would not have occurred." It also alleges, "and it was then and there the duty of said Illinois Steel Company, defendant, to maintain said tubs, blocks, tackle, hoisting engine, and apparatus to start and stop the hoisting of said tubs with ore in them, in good order and condition, and to have the same properly inspected, so as to make sure that said machinery, and all parts thereof, were in good order, and reasonably sufficient, in strength, material and form, safely to do the work expected," etc. The averment is, that defendant allowed the machinery in question to become old and worn out, etc., and that it neglected to have proper inspection of it. These averments we regard as sufficient, as showing the defects in the machinery and the knowledge of appellant of them, or facts from which knowledge would be attributed to it.

If it be not, there was, at most, a defective declaration, which could have been questioned by demurrer. This was not done, and these defects were cured by the verdict. (*City of East Dubuque* v. *Burhyte*, 173 Ill. 553; *Boyce* v. *Tallerman*, 183 id. 115.) It is not necessary, in a declaration, to explicitly say of the defendant that he was guilty of negligence. It is sufficient if the facts stated are such as to raise a duty and show a failure to perform that duty, and consequent injury, from which the law will attach to such failure of duty the charge of negligence. *Taylor* v. *Felsing*, 164 Ill. 331.

The last ground of error relied upon by appellant is the admission by the court of certain testimony on the part of appellee. First, as to the witness Peter Albrecht. This witness was a fellow-employee with plaintiff's intestate. The latter was a "hooker" and the witness was a "scooper." The evidence of the witness had shown that they were being paid by the tonnage, and not by the day, and that the scoopers and hookers were being paid at the same rate. When this statement was made the witness was testifying generally as to how he and all the men working at that work were being paid, and was not testifying wholly as to his own pay or work. Pursuing the examination, the witness was asked:

Q. "You were paid by the ton there when you worked, weren't you?

A. "Yes, sir.

Q. "How often were you paid?

A. "Every two weeks. ·

Q. "How much were you paid every two weeks, on an average? (This was objected to, the objection was overruled, and the witness answered: "Just as was earned.")

Q. "How much was it? (Objection again interposed by appellant and overruled.)

A. "Sometimes $48, $50, $55 every two weeks."

Appellant insists, first, that this witness was only telling about his own wages, and that that was neither

competent nor relevant testimony. We do not think this evidence objected to was so understood by the jury or that such is the proper construction of it. Taking the whole examination on this point, as disclosed by the record, it seems to have been an effort to learn what plaintiff's intestate was earning. While the evidence was not as direct as might have been, we have no doubt the jury understood it, and only considered it in so far as it related to the case.

It is, however, said, that assuming that the witness was testifying in regard to the wages of Ostrowski, it was improper because it did not go to the wage-earning power of the plaintiff's intestate, but was directed to the amount earned by him in the particular employment, and that he might have been earning much more at that particular employment than he would ordinarily have been. The evidence showed that plaintiff's intestate had been working for two years at that particular employment. If it had shown that he had recently begun work of this character or was there for only a short time there might be something in this argument; but two years at one kind of employment with one firm, for the average laboring man, would seem to us sufficient to be a fair and general measure of his business and earnings.

Appellant says, however, that there is no allegation in the declaration of special injury by reason of inability to perform the services in which Ostrowski was engaged at the time of his injury. As we have stated, we do not regard the service in which he was engaged at the time of the injury as a special service but look upon it as being his general business, and in such case there is no necessity for a special allegation as to damages. The averment was, that by reason of the injury he was prevented, from the time of the same, from working at any business and from earning his living. This allegation would be sufficient to cover his usual and ordinary business, and proof of that business and his earning capacity in it was

competent under that averment. *City of Bloomington* v. *Chamberlain*, 104 Ill. 268; *Chicago City Railway Co.* v. *Anderson*, 182 id. 298; *Chicago and Erie Railroad Co.* v. *Meech*, 163 id. 305.

Objection is made that Antonina Ostrowski, appellee, was allowed to testify as to the number of children left by her intestate, and their ages. This testimony was admitted over the objection of appellant, and was improper. The court became satisfied that this was error, and when he came to instruct the jury, and at appellant's request, the jury were told by the third instruction, "that if, under the instructions of the court and the evidence in this case, they should find the defendant guilty, they should not, in assessing damages in favor of the plaintiff, allow anything for mental suffering, or damages of any kind, pecuniary or otherwise, suffered by the widow or next of kin of the said John Ostrowski, but, on the contrary, such damages should be limited by the amount of damages which the preponderance of the evidence shows was suffered by the said John Ostrowski prior to his death." The witness did not testify that they were dependent upon the deceased for their support or that he did support them, but simply gave the names and ages of the children and stated the fact that she was the widow. We do not think this case should be reversed for an error such as this, when we believe that all the injurious effect that could arise from it was removed by the explicit instruction of the court. *City of Joliet* v. *Conway*, 119 Ill. 489; *West Chicago Street Railroad Co.* v. *Maday*, 188 id. 308.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*