THE CHICAGO CITY RAILWAY COMPANY

*v.*

CHARLES HAGENBACK.

*Opinion filed June 19, 1907—Rehearing denied October 8, 1907.*

1. TRIAL—*court cannot disregard mere improbable testimony on motion to direct a verdict.* A statement, by a witness, of a physical impossibility, or which is in contradiction of matters of common knowledge or of laws of nature operating with uniformity, must be regarded as incredible and does not tend to prove the existence of the fact stated; but a statement which is merely inconsistent with reasonable probabilities, but which, under the circumstances, may be believed by the jury, cannot be ignored by the court upon a motion to direct a verdict.

2. SAME—*what testimony as to exercise of care not incredible.* Testimony by a teamster that he looked before turning onto car tracks but saw no car, and saw none though he looked back once or twice in each block, tends to show he was exercising some care and cannot be regarded as incredible, where the night was dark and foggy and the street lights dim, even though the car was, in fact, behind him with its electric headlight and inside lamps lighted, and although one of plaintiff's witnesses testified that he saw the wagon from the car all the time it was in the street.

3. SAME—*evidence cannot be disregarded because contradicted.* Upon a motion to direct a verdict for the defendant, the fact that the evidence for the plaintiff is contradicted does not justify the court in withdrawing it from the consideration of the jury.

4. EVIDENCE—*when evidence as to how far witnesses could see is competent.* Witnesses who were present at the time a street car struck a wagon, and who have testified as to the darkness of the night and the condition of the weather and the distance at which they saw the car and the wagon, may be allowed to express their opinions as to how far they could see at the time, although no actual tests were made.

5. INSTRUCTIONS—*one cannot complain of an instruction substantially like one of his own.* A party cannot complain, on appeal, that an instruction of his opponent was erroneous or misleading, where an instruction of substantially the same import has been given at his own request.

6. SAME—*when refusal of instruction is not error.* Refusal of an instruction to the effect that if the jury found, from the evidence, that the plaintiff was not entitled to recover they would have

no occasion to consider the question of damages is not error, where instructions were given casting the burden of proof upon the plaintiff and informing the jury what he was required to prove in order to entitle him to recover.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

WILLIAM J. HYNES, JOHN E. KEHOE, and WATSON J. FERRY, (MASON B. STARRING, and W. E. WILLIAMS, of counsel,) for appellant.

GOODRICH, VINCENT & BRADLEY, (WARREN NICHOLS, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

At about eight o'clock in the evening of May 1, 1902, appellee, a teamster for Armour & Co., was driving a two-horse wagon, on which there were fifteen empty barrels covered with a dirty, white tarpaulin, south on Halsted street, in the city of Chicago, along the west track of appellant, on which south-bound cars were run, when a street car overtook him just north of Thirtieth street, and, striking the wagon in the rear, pushed it along about eleven feet. Appellee was thrown from his seat down between the horses and under the wagon, and when the car was stopped he was found at the rear of the wagon, near the fender of the street car, with the thigh bone of his left leg broken. He brought this suit to recover damages for his injury, and his declaration contained one original count and seven additional counts. A demurrer was sustained to the fourth and sixth additional counts, and they were amended. The plea was the general issue, and the case was tried by a jury. The charges against the defendant contained in the declaration as it stood at the time of the trial were, first, carelessly

and improperly propelling and managing the car; second, propelling the car at a high and dangerous rate of speed, to-wit, fifteen miles an hour; third, running it in the night time without a headlight; fourth, a repetition of the second charge in practically the same words; fifth, failing to warn plaintiff of the approach of the car, knowing that he was in front of it; sixth, propelling the car without knowledge of the presence of plaintiff in front of it when in the exercise of due care his presence would have been known; seventh, failing to ring a bell or otherwise notify plaintiff of the approach of the car; eighth, employing incompetent and negligent servants to operate, control and manage the car. The court directed the jury to find the defendant not guilty as to the charges that the car was run without a headlight and that the defendant employed incompetent or negligent servants, for want of any evidence tending to support such charges. The court refused to give like instructions as to the counts containing the other charges, and also, at the conclusion of the evidence, refused an instruction directing a verdict of not guilty. The jury returned a verdict finding defendant guilty and assessing plaintiff's damages at $20,000. On motion for a new trial the plaintiff remitted $5000 from the verdict, and the motion was overruled and judgment was entered for $15,000 and costs. The Branch Appellate Court for the First District affirmed the judgment.

It is contended that the court erred in not directing a verdict of not guilty on the ground that the accident was occasioned by the negligence of the plaintiff and not by the negligence of the servants of defendant managing the car. There was no evidence that the car was without a headlight, but, on the contrary, it was proved that it was equipped with an electric headlight and was lighted on the inside with electric lights. Neither was there any evidence that the servants in charge of the car were incompetent, and it was proved that as soon as the motorman discovered the

plaintiff in front of the car he used every possible appliance to stop it before colliding with the wagon, but that it was wholly impossible.  The court directed the jury to find the defendant not guilty as to the charges relating to the headlight and incompetent servants.  The evidence on the charges submitted to the jury was substantially as follows:

Plaintiff had been a teamster for packing houses at the stock yards for more than twenty years, and had been in the habit of driving on Halsted street and knew the manner in which the cars were operated.  The northern terminus of defendant's Halsted street line was O'Neill street, some distance north of Archer avenue, but by reason of elevating tracks north of Archer avenue that avenue was then the northern terminus of the Halsted street line.  Plaintiff had driven the wagon with a load of fifteen barrels of pork trimmings to 1300 North Halsted street.  On his return south he turned off Halsted street where the tracks were being elevated and drove one block west to Lime street. He drove south on Lime street and turned east again into Halsted street at some street not identified but which he said was about two and one-half blocks north from where the accident happened, which would be somewhere about Twenty-seventh street.  Archer avenue comes into Halsted street half a block north of Twenty-fifth street.  The car was probably standing at Archer avenue when the plaintiff turned into Halsted street, as that was the northern terminus of the line.  He did not meet or pass any car going in the opposite direction, so that it must have been north of him. The evening was dark and foggy.  There had been a misty rain and there was considerable mist and fog.  West of Halsted street there were no buildings and the country was open prairie, so there was no light from adjoining buildings, and the streets coming in from the east did not cross Halsted street but stopped there.  The street was practically deserted.  There was no such number of people or vehicles as required slow running or any special slacking of speed.

It is argued that this evidence showed that the plaintiff could have seen the car when he turned into Halsted street at least as far as Archer avenue and could have seen the car at any time by looking back, and demonstrated that he exercised no care whatever for his own safety. He testified that when he turned into Halsted street he looked north but could see no car, and that afterward he looked back now and then, once or twice in a block, and was unable to see any car. The argument is that his statement was so improbable as to be worthy of no consideration whatever; but however improbable his statement may have been, we do not think it could be said to have been incredible. It is true that a statement by a witness of a physical impossibility, or which is in contradiction of matters of common knowledge or laws of nature operating with uniformity, would be regarded as incredible and would not tend to produce in any rational mind a belief in the existence of the fact stated. As such testimony would not have any tendency to prove the fact averred it would not require the submission to a jury of the question whether the fact existed; but if a statement is merely inconsistent with reasonable probabilities, and the circumstances are such that it might be believed by a jury, the court could not ignore it on a motion to direct a verdict. In view of all the circumstances we cannot say that the testimony of plaintiff was of such a character that it did not tend to prove the fact that he exercised some care by looking for the car. The night was dark and foggy and the street lights were dim, so that it was more than ordinarily difficult to see. It is true that the plaintiff's counsel insisted, and now insist, that the motorman ought to have seen the wagon but that the plaintiff could not see the car. He had a witness who testified that he saw the wagon coming from the side street while the witness was standing at the corner of Archer avenue; that he got on the car there and could see the wagon all the time for four and one-half blocks while he was on the car before it struck the wagon,

while plaintiff testified that he could not see the car with the headlight burning and the lights inside; but inconsistencies of that kind would not have justified the court in determining the fact as a matter of law.

It is further contended that the plaintiff was guilty of negligence by driving his wagon without a light, in violation of an ordinance of the city of Chicago which was offered in evidence. If the plaintiff was driving his wagon, in violation of the ordinance, without a light it would have been evidence of negligence on his part, but whether he was doing so was a disputed question of fact. He testified that he had a light, consisting of an ordinary lantern, on the left side of his wagon. There was no other evidence of that fact, and he was contradicted by the positive testimony of at least one witness and by the fact that a number of witnesses who were present saw no light of any kind about the wagon before or at the time of the accident, or afterward. The court was not authorized to weigh the testimony and determine which was true on the motion to direct a verdict.

There was no evidence which fairly tended to sustain the charge of an immoderate rate of speed or that the car was running at the rate of fifteen miles an hour. The most that any witness said was that the car was running at full speed as cars were run, and no one estimated the rate more than eight miles an hour. The motorman testified that he was running about seven miles an hour and as soon as he saw the wagon he made every effort to stop the car. There was no street crossing Halsted street north of Thirtieth anywhere near the place of the accident and there was little or no travel on the street at the time. There was no evidence tending to show that the car was running at a rate of speed that was dangerous, and in *Rack* v. *Chicago City Railway Co.* 173 Ill. 289, a much higher rate of speed than that at which this car was running was not considered dangerous in itself. There were several passengers who testified on the trial confirming the testimony of the motorman

that the wagon could not be seen until the car was so close to it that it could not be stopped, and one of them, who stood by the motorman, said that he could not see the wagon until within twenty or thirty feet of it. There were witnesses who testified that the gong was being sounded, but there were several who did not hear any bell or warning as the car approached, and it cannot be said that there was no evidence tending to sustain the charge of failing to ring a bell or otherwise warn plaintiff of the approach of the car, or that in the condition of the weather the omission of such warning was not negligence. The court did not err in declining to direct a verdict, and controversy as to questions of fact ended with the Appellate Court.

It is urged that the court erred in permitting witnesses to state how far they could see on the night in question. The witnesses were present at the time of the accident and testified as to the condition of the weather and the distance at which they saw the wagon and the car, and gave opinions as to how far they could see. The argument is, that they could only state the results of actual trials at the time, but we do not regard that as a necessary condition. The testimony tended to show the atmospheric condition and the kind and character of the light at the time, and we think it was competent.

Complaint is also made of an instruction given at the request of the plaintiff. The first paragraph of the instruction stated that if the jury found, from the evidence, that the plaintiff had made out his case by a preponderance of the evidence as laid in his declaration or some count, then the jury should find for the plaintiff. The objection is that the evidence did not tend to sustain every count of the declaration, especially those counts which charged the want of a headlight and the employment of incompetent or negligent servants. As to those counts the court directed the jury to find the defendant not guilty, but it is insisted that the instructions giving such direction were not read to the jury.

We do not so interpret the bill of exceptions, but regard the fair meaning of it to be that the court did not read any of the refused instructions but read the instructions which were marked as given.  The practice of referring the jury to the declaration is not a good one, but in this case the court gave at the request of the defendant the twenty-eighth instruction, which had the same fault as the one complained of.  It stated as one of the conditions for recovery that the plaintiff must have proved by the greater weight of the evidence that the defendant was guilty of negligence in the manner charged in the declaration or one of the additional counts thereof, and a party cannot be heard to complain of an instruction of the same character as one given at his own request.

The remainder of the instruction was the same as the first instruction in the case of *Illinois Central Railroad Co.* v. *Cole,* 165 Ill. 334, and counsel say that it was there approved.  There was no question in that case whether the instruction was a correct statement of the law, and the court said that it was not seriously urged that the instructions were erroneous nor that they did not in all respects state correct propositions of law, but, rather, that they were misunderstood by the jury on account of improper remarks of counsel.  As the court stated that no objection was made to the instruction in question, what the court said about it did not conclusively establish its correctness.  In this case objection is made to the instruction on the grounds that it authorized compensation for all injuries, including mental suffering and chagrin not the direct result of physical pain; that its general tendency was to impress the jury with their independence of the law, and that it was most vicious in not requiring the jury to believe, from the evidence, that the damages they might award were such as would compensate the plaintiff for his injuries.  The purpose of the instruction was to enumerate proper elements entering into the damages, and it was supplemented by other instructions

by which the jury were advised that the case must be decided upon the evidence. We do not think the instruction was subject to the criticisms made or that the jury would understand it as including merely mental suffering unconnected with physical pain.

The court refused an instruction to the effect that if the jury found, from the evidence, that the plaintiff was not entitled to recover, they would not have occasion to consider the question of damages or the character or extent of his injuries. That would be the natural order of considering the case and the instruction might properly have been given, but it cannot be presumed that the jury failed to consider whether the plaintiff was entitled to recover at all, before going into the question of damages. Instructions were given which cast the burden of proof upon the plaintiff and informed the jury what he was required to prove in order to entitle him to recover, and we do not think the refusal of the instruction was prejudicial to the defendant.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*