DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1909.

---

## John H. Ruch, Appellee, v. Aurora, Elgin & Chicago Railroad Company, Appellant.

### Gen. No. 5,068.

1. PASSENGER AND CARRIER—*when relation established.* If a person enters a car at a place where the carrier is accustomed to receive passengers with the purpose of becoming a passenger and has the means with which to pay his fare and intends to pay it, the relation of passenger and carrier is established even without actual payment of the fare.

2. PASSENGER AND CARRIER—*obligations of latter.* A carrier of passengers is required to exercise the highest degree of care consistent with the practical operation of its road. It is bound to do all that human care, vigilance and foresight can reasonably do consistent with the mode of conveyance, the practical operation of its road and the exercise of its business as a carrier.

3. PASSENGER AND CARRIER—*what negligence.* If a carrier in entering a switch runs its car with unusual force and speed and with a speed and force highly calculated to overturn or destroy the equilibrium of passengers standing upon the platform and aisle of the car, negligence as a question of fact is established.

4. PASSENGER AND CARRIER—*what not contributory negligence.* It is not contributory negligence as a matter of law for a passenger compelled to stand in a street car to have a package in each hand.

5. PASSENGER AND CARRIER—*when declaration states cause of action.* Held, that the first count of the declaration in this case stated a good cause of action predicated upon the negligence of a carrier. Chicago City Ry. Co. v. Jennings, 157 Ill. 274, and other cases followed.

6. PLEADING—*how legal duty should be shown.* A count of a

(329)

declaration is not bad merely because it incorrectly states the duty of the defendant; the statement of the duty is but the statement of a legal conclusion and is unnecessary. The declaration can state the facts from which the law implies the duty, and if it does so state the facts and the duty appears, it is sufficient.

7. INSTRUCTIONS—*effect of reference to bad count.* An instruction will not reverse merely because it refers to a count of a declaration which does not state a cause of action if there is another count contained in such declaration which does state a cause of action and will support a recovery.

8. MEASURE OF DAMAGES—*when instruction properly limited.* *Held*, that the instruction in this case upon the measure of damages in an action for personal injuries was so limited as not to authorize the jury to fix the amount of the award regardless of legal rules.

Action in case for personal injuries. Appeal from the Circuit Court of Kane county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed October 19, 1909.

HOPKINS, PEFFERS & HOPKINS, for appellant.

BOTSFORD, WAYNE & BOTSFORD, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellee was thrown from a street car operated by appellant, as it was being driven upon a switch in the city of Elgin, and was seriously injured. He brought this suit against appellant to recover damages for said injuries, and upon a trial had a verdict and a judgment for $6000, from which defendant below appeals.

Appellant contends that the court erred in giving certain instructions requested by appellee, which it is claimed assumed that he was a passenger upon said car, and that the question whether he was such a passenger should have been left to the jury. The car, upon which this accident happened, was going north on Douglas avenue in said city. Division street crosses Douglas avenue at right angles. Seventy-three feet and three inches north of the north line of Division street was the south rail of a track of the C. & N. W. Ry. Co., crossing Douglas avenue diagonally

from southeast to northwest. Eighty-one feet north of the north rail of said track was a switch of said street car line. Shortly after five o'clock in the evening of May 23, 1906, four extra cars, called "trippers," were going north on said avenue, such trippers being run at that hour of the day especially to accommodate the employes of the Elgin watch factory. On the main track, north of the south head of said switch, were two south bound cars, waiting for the trippers to pass north. The third of said trippers was car No. 102 and was 44½ feet long. When the car passed north of Division street and approached the C. & N. W. Ry. Co.'s tracks, it was customary for the car to stop and for the conductor to go ahead on the railroad crossing and flag the car across. If the car stopped so that its rear was at the north side of Division street, this would make two stops necessary between Division street and the railroad tracks. It was therefore customary, especially with cars the length of No. 102, not to stop exactly at the north line of Division street, but to go about ten feet beyond, and one stop then accommodated passengers who wished to leave or enter the car at the rear and also enabled the conductor to go upon the track and flag the car over. On the evening in question, car No. 102 stopped when the rear was about ten feet north of the north line of Division street. The conductor went ahead on the east side of the car to flag it over the crossing. Appellee and one or more others got upon the rear platform from the west side. The car then moved forward and went over the crossing and went north to and entered the switch. Appellee's purpose in entering the car was to become a passenger and to ride to his home. He had the means with which to pay his fare and intended to pay it. The car was crowded, and when the conductor got on as the car passed over the railroad he did so at the front end of the car and, as he was on the east side of the car and appellee got on at the west side, he had not yet seen appellee when the accident happened and had not asked for his fare.

332    APPELLATE COURTS OF ILLINOIS.

Ruch v. Aurora, Elgin & Chicago Railroad Co., 150 Ill. App. 329.

It was not only proved that it was customary to stop to let passengers on a few feet north of Division street, but the statements of counsel for appellant at the trial, contained on pages 172-3-4 of the record, were an admission that that was where appellant stopped its car for passengers to get on. In West Chicago St. R. R. Co. v. Manning, 170 Ill. 417, and in authorities there quoted, it was held that it was not necessary that there be an express contract nor a consummated act, in order to create the relation of carrier and passenger; that the contract may be implied from slight circumstances, and that the payment of the fare was not necessary to give rise to liability; that the relation depends upon the intention of the person at the time he enters the car; that he who in an orderly way enters a street car as a passenger is not to be regarded as a trespasser until he has made a special contract with the conductor, based upon the payment of the fare. "The carrier may demand its payment, if he chooses to do so, but if he permits the passenger to take his seat or to enter his vehicle as a passenger without such requirement, the obligation to pay will stand for the actual payment, for the purpose of giving effect to the contract, with all its obligations and duties. Taking his place in the carrier's conveyance with the intention of being carried creates an implied agreement upon the part of the passenger to pay when called upon, and puts him under a liability to the carrier, from which at once spring the reciprocal duty and responsibility of the carrier." In Petersen v. E. A. & S. Traction Co., 238 Ill. 403, the court approved the following instruction: "The court instructs the jury that to establish the relation of carrier and passenger the payment of fare is not always necessary; that if the carrier permits the passenger to get upon the car without requiring payment in advance, the obligation of the passenger to pay will stand for the actual payment, for the purpose of giving effect to the contract to carry, with all its obligations and duties. Taking his place upon the car with

SECOND DISTRICT—OCTOBER, 1909.     333

Ruch v. Aurora, Elgin & Chicago Railroad Co., 150 Ill. App. 329.

the intention of being carried creates an implied agreement upon the part of the passenger to pay when called upon to do so by the carrier." We are of opinion that the relation of carrier and passenger was undoubtedly established in this case; that there was no conflict in the evidence upon that subject; and that the court could properly assume that relation in the instructions. But the instructions referred to, in our judgment, did not assume that the relation existed; and the instruction given at appellant's request and appearing on page 403 of the record submitted to the jury the question whether appellee was a passenger, and laid down the rules of law on that subject favorable to appellant with fullness of detail. As appellee was a passenger upon this car, operated by appellant as a common carrier, it owed to appellee the duties laid down in North Chicago St. R. R. Co. v. Polkey, 203 Ill. 225, as follows: "A railroad company, as a carrier of passengers, is held by the law to the use of the highest degree of care consistent with the practical operation of its railroad. It is bound to do all that human care, vigilance and foresight can reasonably do, consistent with the mode of conveyance, the practical operation of its road and the exercise of its business as a carrier."

The car was crowded when appellee got upon it. The seats were all filled. At least six persons were standing in the aisle, but the aisle was not filled. The rear platform or vestibule was crowded. Several witnesses testified that there were about ten men standing upon it. Appellee went upon it from the west side, went up the step and advanced about one foot from the step, saw that the aisle was not filled and planned to enter the car. He carried in one hand an umbrella and in the other a package of bananas. As he was standing thus, with his back to the west, in the crowd of men, the car struck the switch and took the turn upon the switch rail with such speed and force as to cause appellee to lose his equilibrium and fall backwards out of the car. He struck the ground upon

334    APPELLATE COURTS OF ILLINOIS.

Ruch v. Aurora, Elgin & Chicago Railroad Co., 150 Ill. App. 329.

his head or shoulders about five feet from the car. He was caused to fall, not only by the suddenness in the change of the direction of the car when it struck the switch, but also by the fact that this change in direction also affected the other passengers and caused them to sway against him. Appellant contends that as no one testified that it was dangerous to run the car upon the switch at the speed then actually used, therefore the proof makes no case. Without determining whether any witness could have been permitted to testify that the speed was dangerous, it is obvious that the question whether it was dangerous may be determined from the testimony of the witnesses who described the manner in which the car went upon the switch and its effect upon passengers standing. Many witnesses testified upon that subject, and, without detailing the testimony of each, we think it sufficient to say that the great preponderance of the proof shows that the car entered the switch with unusual force and speed and with a speed and force which was highly calculated to overturn or destroy the equilibrium of those passengers who were standing both on the rear platform and in the aisle. The conductor was bound to know that many passengers were standing, and it was his duty to see that the car was run upon this switch, where its direction was suddenly changed, no faster than was essential to protect his passengers. In North Chicago Street R. R. Co. v. Polkey, *supra*, speaking of a passenger who was permitted to stand upon a footboard, it was said that if no seat is furnished and the carrier permits a passenger to ride in that way, the carrier assumes the duty of exercising the care demanded by the circumstances. And again, ''in this case it was not inconsistent with the mode of conveyance to operate the car at such a slow rate of speed as to prevent the occurrence of any accident.'' We are of opinion that the jury were warranted in finding from the evidence that this car was driven upon this switch at a speed which was dangerous to the safety of the passengers who were standing, and

that it was negligence to so drive the car when about sixteen passengers were standing, and that the speed and force with which the car was driven upon the switch caused the injury to appellee and made appellant liable therefor. Among the cases in Illinois where a standing passenger has been thrown from a car or the platform or footboard thereof, or has been forced off by the overcrowding of platform or car, and has been injured, and a recovery of damages awarded for such injuries has been sustained in our Supreme Court, are the following: C. & A. R. R. Co. v. Fisher, 141 Ill. 614; West Chicago St. R. R. Co. v. McNulty, 166 Ill. 203; L. S. & M. S. Ry. Co. v. Kelsey, 180 Ill. 530; Chicago City Ry. Co. v. Morse, 197 Ill. 327; C. & W. I. R. R. Co. v. Newell, 212 Ill. 332; and Alton Light & Traction Co. v. Oller, 217 Ill. 15. The principles underlying a recovery are approved in North Chicago St. Ry. Co. v. Polkey, *supra*. The case is also similar in principle to Petersen v. E. A. & S. Traction Co., *supra*.

After appellee got upon the car, it went north from 150 to 175 feet before appellee was thrown off. Appellee knew of the existence of the switch and that this car would pass upon it, because he regularly rode upon this line. It is contended that he did not exercise due care for his own safety, and that this lack of due care contributed to the accident. It is urged that before the car reached that point he should have passed into the aisle, where he could not have fallen off the car, or that he should have taken hold of the railing in the vestibule on the rear, and that he should not have had both hands occupied. While some of the evidence indicates that he could have immediately passed into the aisle, other evidence indicates that there were about ten men on the rear platform, between whom he could not instantly pass into the car. Some of the testimony tends to show that he could have taken hold of the railing, while other testimony indicates that there were persons between him and the railing. There was no proof that he ever before rode

into this switch upon a car driven so rapidly as to endanger the ability of passengers to stand upright. It was a question of fact for the jury whether he was in the exercise of due care. We cannot say as a matter of law that it is negligence for a passenger, compelled to stand upon a street car, to have a package in each hand. We do not feel warranted in disturbing the conclusion of the jury that appellee was in the exercise of due care.

Complaint is made of the ruling of the court in sustaining objections to certain questions put by appellant to its witness, Overton. The questions were leading and suggestive. Moreover, an examination of the entire testimony of Overton shows that substantially all that was sought to be ascertained by these leading questions was afterwards obtained from the witness in answer to questions by appellant to which no objection was interposed.

It is contended that no count of the declaration states a cause of action or is sufficient to support the verdict. Each count sets out that appellant operated an electric railway along Douglas avenue in the city of Elgin, and operated this car thereon, and that appellee became a passenger thereon and was exercising due care, and that he was thrown from the platform, and it describes the character of the injuries he received by reason of that fall. The first count charged that it became the duty of appellant to so run, manage and control its car that appellee would be safely carried northerly along said Douglas avenue; but that appellant did not regard its duty or exercise due care in that behalf, but on the contrary, so carelessly and improperly drove and managed the car that by and through the negligence, mismanagement and unskillfullness of appellant, the car was run into and upon said switch with great force and violence, thereby causing the car to turn so suddenly and violently from the main track into the switch track that appellee was thrown with great violence from the rear platform of the car to and upon the ground. This count seems to

SECOND DISTRICT—OCTOBER, 1909.    337

Ruch v. Aurora, Elgin & Chicago Railroad Co., 150 Ill. App. 329.

be a perfect statement of a cause of action, under Chicago City Ry. Co. v. Jennings, 157 Ill. 274; City of Chicago v. Selz, Schwab & Co., 202 Ill. 545; Chicago City Ry. Co. v. Pural, 224 Ill. 324. The second count charges that the rear platform was filled with passengers before appellee got upon it and that the aisle in the interior of the car was free of standing passengers; that it was the duty of appellant to cause the rear platform to be cleared of obstructions by causing the passengers standing thereon to move into the interior of the car, so that appellee could at once pass into the interior of the car; that defendant did not regard its duty nor use due care in that behalf, but on the contrary, permitted said passengers to stand on the rear platform and did not require them to enter the interior of the car, so that as appellee was proceeding to pass through the crowd of passengers upon the rear platform to the interior of the car, appellant ran the car on a certain switch or turnout, and because of appellee's insecure position upon said crowded platform, by reason of said crowd of passengers thereon, as the car ran into said switch or turnout, appellee was thrown with great violence from the rear platform to and upon the ground. The additional count, called also the third count, charged that when appellee stepped upon the rear platform, it was filled with passengers, and the aisle in the interior was free of standing passengers; that it became the duty of appellant to cause the rear platform to be cleared of the obstructions by causing the passengers to move into the interior of the car, so that appellee could at once pass into the interior of the car; that appellant did not regard its duty nor use due care in that behalf; but, on the contrary, permitted the passengers to congregate and stand on the rear platform, and did not require them to enter into the interior of the car, so that when appellee was about to proceed and was proceeding to pass through the crowd of passengers on the rear platform into the interior of the car, appellant ran the car into a certain switch or turnout and

338 APPELLATE COURTS OF ILLINOIS.

Ruch v. Aurora, Elgin & Chicago Railroad Co., 150 Ill. App. 329.

the crowd of passengers, so congregated on the rear platform, were by the motion of the car as the same was run upon the switch or turnout, thrown and forced over and against the appellee, whereby he was forced off and pushed from the platform to and upon the ground. It will be conceded for the purposes of this decision that no legal duty rested upon appellant to cause the standing passengers to move into the interior of the car so as to free the rear platform from the obstruction caused by their presence there. It does not follow, because these counts incorrectly stated the duty of appellant, that they do not state a cause of action. The statement of the duty is but the statement of a legal conclusion, and is unnecessary. The declaration should state the facts from which the law raises the duty, and the omission of the duty and the resulting injuries. In Taylor v. Felsing, 164 Ill. 331, the court said: "Whether the liability rests upon the disregard of duty or upon the contract to replace the catch-pulley, it was not necessary that either such disregard or failure to comply with the agreement should be characterized in the declaration as careless or negligent. If there was any disregard of duty it was necessarily negligent, whether so averred in the declaration or not. Where facts are stated which in law raise a duty, and the disregard of duty and consequent injury are properly averred, the count will be regarded as sufficient. The pleader must state facts from which the law will raise a duty, and show an omission of the duty and resulting injury, but when that is done an allegation that the act was negligent is unnecessary." In Ill. Steel Co. v. Ostrowski, 194 Ill. 376, this doctrine was stated in the following language: "It is not necessary, in a declaration, to explicitly say of the defendant that he was guilty of negligence. It is sufficient if the facts stated are such as to raise a duty and show a failure to perform that duty, and consequent injury, from which the law will attach to such failure of duty the charge of negligence." To the same effect is C. & A. R. R. Co. v.

Swan, 176 Ill. 424. The averment of the duty of appellant in the second and third counts was therefore immaterial. Each of these counts charges that appellant was operating the car, that appellee was a passenger thereon, that he was exercising due care, that his position on the rear platform was insecure by reason of the crowd of passengers thereon, and that appellant ran the car upon the switch in such a way that he was thrown from the platform and injured, the third count adding that the passengers were thrown against appellee and that this caused him to be forced off the car. We conclude that, while these counts are inartificially drawn, especially the second, yet they do state a cause of action, and therefore the court did not err in giving instructions which told the jury that if appellee was a passenger and if he exercised due care for his own safety and if he was injured by the negligence of appellant, as charged in the declaration or some count thereof, then appellant was liable. But if the second count is so inartificial in form as not to state a cause of action, yet we regard it as so clear that a good cause of action is stated in the first count, and so clear that that cause of action is established by the proof, that we are of opinion the judgment should not be reversed because of the reference in said instructions to the second count.

It is contended that the instruction on the measure of damages, given at appellee's request, permitted the jury to give appellee such damages as they thought he ought to recover, regardless of all legal rules. This criticism arises from these words used after naming four different elements of damage: "The third and fourth of these elements are from necessity left to your sound discretion, but your conclusion should be based upon all the facts and circumstances in evidence before you." This criticism is only made plausible by omitting to consider an earlier part of the same instruction, which told the jury that "the measure of his recovery is such damages as will compensate him for such injuries." The third and fourth elements,

referred to in the part of the instruction criticised, were such sums as would compensate him for the loss of the power to earn money in the future, if such injuries had impaired that power, and such reasonable sum as the jury may award on account of pain, if the evidence shows that he had suffered pain by reason of such injuries. When the entire instruction is considered, we are of opinion that it does not turn the jury loose to award what they please nor to award vindictive damages, but requires them to confine their award to such sum as will compensate appellee for his injuries. In I. C. R. R. Co. v. Cole, 165 Ill. 334, an instruction had been given in substantially the same language, and that judgment was affirmed. In Chicago City Ry. Co. v. Hagenback, 228 Ill. 290, wherein a similar instruction had been given, the judgment was affirmed, although the language used implies that the instruction was not regarded as free from criticism.

There is, however, a more serious objection to this instruction. The first element of damage stated in the instruction was "such sum as will compensate him for the expenses, if any the evidence shows, which he has paid or become liable for, in his efforts to effect his cure, and for his care and nursing during the period that he was disabled by the injuries, if the preponderance of the evidence shows that he was so disabled." Appellee called and was attended by his own physician, Dr. Burlingame. He was then treated by Dr. Terrill while Dr. Burlingame was on a vacation. Dr. Burlingame resumed treatment of the case upon his return. Appellee was afterwards treated by Dr. McCall, an osteopath. Appellee testified that Dr. Burlingame told him his bill was $75. Counsel for appellant then stated to counsel for appellee: "I agreed with you this morning, in order to save Dr. Burlingame from coming down again, that if you knew what his bill was, I would admit it and save the Doctor from coming." Counsel for appellee then stated that he had telephoned Dr. Burlingame for the amount of his

bill, and that he replied that it was $75. Counsel for appellant said: "I will admit that." Counsel for appellee then stated that Dr. Terrill's bill was $12 and counsel for appellant then said that he would admit that. While the admission did not state that the bill was reasonably and necessarily incurred in the treatment of appellee for the injuries received by this accident, nor that these were the usual and customary charges therefor, yet counsel for appellant obviously made the admission to save the physician the necessity of attending. court again at the county seat, some distance from Elgin, and he obviously meant to admit all that the doctor could testify on that subject to make the sum named a charge against appellant. Immediately thereafter appellee testified that the amount of Dr. McCall's bill for his services was $81 and this was not objected to, and he then testified without objection that his wife's sister assisted in taking care of him for six weeks after the accident, and that he had to either keep her at home or get a nurse, and that she was employed at that time at the watch factory at about $2 per day. He did not prove that Dr. McCall's charges were customary and usual charges nor that his services were reasonably necessary in endeavoring to be healed of these injuries, and he did not testify that he had paid or agreed to pay his sister-in-law for the services she rendered as a nurse, nor what was the usual and customary charge for such nursing. The presence of this evidence in the record is not error, because it was not objected to, but it is claimed that under the first element stated in the instruction above quoted in part, the jury may have allowed these bills without proper proof. It will be seen that the instruction only allowed him for the expenses which the evidence showed he had paid or become liable for, in his efforts to effect a cure, and for his care and nursing while disabled by the injuries. If the evidence did not show that he had paid or become liable for those items, then they were not within the elements of damage described in the instruction.

The instruction is correct, but appellee was very careless in making proof of these expenses, led thereto very likely by the admissions which counsel for the appellant had so freely made. We cannot say that the instruction is erroneous, since it is properly guarded. We cannot say that the evidence was improperly admitted, for it was not objected to. If the damages awarded by the jury were excessive, we might conclude that the services of Dr. McCall and the sister-in-law entered into the award. But appellant in its printed brief and argument has not contended that the damages awarded are excessive. If the damages awarded are not excessive, then we may rightfully assume that the jury strictly followed the instruction in question and only allowed such expenses as the evidence showed appellee had paid or became liable for in his efforts to effect a cure while disabled by these injuries. We therefore find in these instructions no reversible error.

Appellant complains of the refusal of certain instructions. Some of them are not based upon the evidence; others ignore undisputed testimony, and others are fully covered by the given instructions. We find no reversible error in the refusal of these instructions, when the entire series of given instructions is considered in connection with the evidence in the case.

While the second and third counts of the declaration are subject to criticism, and the evidence in regard to the services of Dr. McCall and the nurse is incomplete, and in these respects we are not fully satisfied with the condition of the record before us, yet, in view of the very serious injuries suffered by the appellee and the fact that in argument appellant does not claim that the sum awarded as damages is excessive, we conclude that there is no reversible error in the record, and the judgment is therefore affirmed.

*Affirmed.*