[No. 22475. Department Two. January 5, 1931.]

J. BERTRAM BAIRD *et al., Appellants,* v. EDWARD WEBB, *Respondent.*[1]

[1]Reported in 294 Pac. 1000.

*Fred M. Bond* and *Wright & Wright,* for appellants.
*Shank, Belt, Fairbrook & Rode,* for respondent.

BEALS, J.—Plaintiffs brought this action for the purpose of recovering damages sustained by reason of the death of their nine-year-old daughter, Margaret, who lost her life as the result of being struck by a school motor bus operated by defendant.

Hobart road, near Maple Valley, in King county, is of hard gravel approximately eighteen feet in width, and runs in an easterly and westerly direction from the town of Maple Valley past the school house. Margaret Baird and other children living near her had for some time been accustomed, in going to and from school, to follow a path which led into the road from the north, the children then walking east a short distance along the road and entering the school grounds. Immediately to the east of the point where the path from the north enters the road, there stands on the north side of the road an embankment sufficiently high to obstruct a view of the path by a person driving down the road.

For two years or so prior to March 15, 1929, the day of the accident, defendant had been carrying school children to and from the grade school which Margaret attended, defendant knowing from his experience on the road that children were in the habit of crossing the highway at the place above referred to, which was the only practical and convenient way for Margaret and other children living near her to follow in going to and from the school house. Defendant was driving a three-quarter ton White motor truck, and was returning from the school house where he had delivered his passengers. He was driving westerly along the Hobart road toward the town of Maple Valley at approximately fifteen minutes after eight o'clock in the fore-

noon. Margaret Baird entered the road from the path in front of defendant's truck, which struck her, inflicting upon her injuries which caused her almost immediate death.

Plaintiffs allege that defendant was guilty of negligence in that, at the time of the accident, he was driving his automobile at a high and dangerous rate of speed; that he failed to have his automobile equipped with any signal device which would give a warning sound of his approach, and that he failed to sound any such warning; that he failed to keep a proper lookout, although he knew that it was probable that children would at that hour of the morning be entering the road from the path above described; that defendant did not have his truck under reasonable and proper control; and that, after observing the child in the roadway and in the path of his truck, he did not apply his brakes, slacken his speed, or change his course, all of which he might have done, thereby avoiding striking the little girl.

Other grounds of negligence were alleged, all of which were denied by defendant, who contended that Margaret ran out into the road in front of him, and that he did not see her until she was from fifteen to eighteen feet from him, when he had no time to avoid striking her. Defendant pleaded that the accident was caused by the contributory negligence of the minor. This was denied by plaintiffs, who alleged that, in spite of the high embankment by the side of the road above referred to, a person driving an automobile on the right-hand side of the road could have seen a child entering the road from the path from a distance of at least eighty to one hundred feet east along the road and in plenty of time to check the speed of the machine so as to avoid striking the child.

The action was tried to the court sitting with a jury,

and resulted in a verdict in favor of defendant. From a judgment of dismissal entered upon this verdict, plaintiffs appeal.

Appellants first contend that the trial court erred in refusing to allow witnesses on behalf of appellant to testify as to distances on the road between certain points. The question of from what points and distances along the road a person in the position of respondent, approaching the place where the path from the north enters the road, could see a child coming into the road from the path was of considerable importance. A witness sworn on behalf of appellants testified that with a steel tape he took measurements along the road for the purpose of determining questions of visibility from along the highway as above outlined. An objection interposed by respondent to the following question was sustained:

"Q. How far back up the road to the east could you see where the pathway came where these children had the habit of coming through?"

After an objection to the foregoing question was sustained, appellants' counsel propounded the following question:

"Q. Mr. Baird, from the east, that is towards the school house, on the right-hand side of the road looking towards the west, towards this telephone pole, how far up the road could you look down and see this path? You made a test that day to see, did you?"

Respondent's objection to this question was also sustained. A few moments later appellants' counsel made another attempt to elicit from the witness testimony concerning this same matter, to which an objection was also sustained. Questions along the same line were propounded to another of appellants' witnesses, which testimony, on respondent's objection, the court

refused to admit. It seems that objections to this line of testimony were sustained upon the ground that the questions propounded called for conclusions of the witnesses, or for matters of opinion, and were matters calling for expert testimony which the witnesses were not qualified to give.

Respondent contends that no prejudicial error was committed by the court in its rulings above referred to, because photographs showing the road were admitted in evidence, and because testimony was received as to the presence or absence of obstructions at and around the scene of the accident, and that the witness who took the measurements was permitted to testify that there was no obstruction at all on the highway, and gave other testimony along the same line.

The testimony to which objections were sustained was admissible. A witness testifying to an estimate of distance, or some similar matter, is not, under the circumstances disclosed by this record, testifying as an expert. *Illinois Central R. Co. v. Swisher,* 53 Ill. App. 411. In 22 C. J., p. 565, the rule is laid down that

"A witness may state the limitation, in point of distance, of human hearing, or of human vision of objects under given conditions."

This court, in the case of *Blackwell v. Seattle,* 97 Wash. 679, 167 Pac. 53, used the following language:

"We think there is no merit in either of these contentions. Mrs. Blackwell testified that she did not know of the existence of the pipe. The question whether the degree of darkness was such that one who did not know the pipe was there could have seen it, was not a question which required expert evidence. Any person may testify concerning the degree of darkness, and we think such evidence does not fall within the rule of expert opinions."

In the case of *Gulf, C. & S. F. R. Co. v. Washington,* 49 Fed. 347, the court said:

"A witness familiar with the track of the defendant's road at the place where the cattle were killed was asked how far cattle on the track could be seen in each direction by the engineer or other person on the track from the point where they were killed. The objection to this question—that it called for the opinion of the witness—was rightly overruled. The question related to a fact about which any one acquainted with the track, and possessed of ordinary intelligence and eyesight, might give his opinion or judgment. It is everyday practice in the courts for witnesses to be asked similar questions, such as the size of a room, the width of a street, the distance between two objects, and the distance a given object can be seen from a particular stand-point. In these and like cases it is competent for a witness acquainted with the places or localities to state his best judgment, based on his personal knowledge and observation, of the localities and places. These are matters of common knowledge, about which experts have no advantage over laymen; and to hold that a witness could not testify to the distance between objects, or the distance a given object could be seen from a particular stand-point familiar to him, unless he had actually measured the distance, would entail intolerable expense and delay in the administration of the law, and frequently result in a total failure of criminal as well as civil justice."

The case of *Chicago City R. Co. v. Hagenback,* 228 Ill. 290, 81 N. E. 1014, is to the same effect.

The distances along the road, concerning which testimony was sought to be elicited, were not great, but were such as are within the common knowledge of every person possessing normal faculties and experience. The witnesses could, of course, be cross-examined as to their knowledge of the situation, their ability to estimate such distances, or how they estimated or measured the same. The matter was one of considerable

importance to appellants in the presentation of their case, and we hold that the trial court committed reversible error in sustaining objections to the testimony.

█ In the next place, appellants contend that the trial court erred in admitting testimony concerning statements made immediately after the accident by Beulah Baird, the thirteen-year-old sister of Margaret, who was with her at the time of the accident. Mrs. Blanche Gruenes, a witness called on behalf of respondent, testified that, immediately after the accident, she heard Beulah scream, saying, ''Oh Mr. Webb, you killed Margaret,'' the child saying an instant later to her mother, ''Oh mama, it was not Mr. Webb's fault,'' which she repeated several times. Beulah, on cross-examination, testified that she was at the time laboring under great excitement, and did not remember what she had done or said. Appellant Beulah May Baird testified that she did not remember any such statements by her daughter.

The testimony sought to be elicited from the witness Blanche Gruenes was not admissible, either as part of the *res gestae,* or by way of impeachment, as contended by respondent. The testimony was, however, admissible for other reasons.

█ The following occurred upon the examination of appellant Beulah May Baird, Margaret's mother:

''Q. Now where was Mr. Webb when you got down to the place? A. Why, he was standing here by the road. Q. Had he got out of his car, the automobile bus? A. Well, he was getting out; as I came down over the hill he was getting out of his truck. Q. I mean when you got down to the road? A. Yes, he had gotten out. Q. Did you hear him make any statement to your daughter Beulah or Beulah any statement to him at that time? A. Well, as I come across the track just as I got across I heard my little girl say, she was screaming, 'Oh, mama. Oh, Mr. Webb,' she says, 'You

have taken off Margaret.' Q. Mrs. Baird, what was the condition of Beulah at that time? A. She was in hysterics and I had to pull myself together the best I could to get her quieted down. Q. Did Mr. Webb make any reply to that statement when she made it? A. He never said nothing as I know of because I don't remember of hearing him say anything.''

Respondent argues that, as Mrs. Baird was permitted to testify to the hysterical words of little Beulah, "Oh Mr. Webb, you have taken off Margaret," and as the witness was then asked whether or not Mr. Webb made any reply to this statement, to which Mrs. Baird replied that he said nothing, respondent was entitled to show everything that Beulah had said, as the jury might well be of the opinion that, had Beulah said no more than "Oh Mr. Webb, you have killed Margaret," or words to that effect, respondent would have been called upon to make some reply or explanation; but that, if it appeared that Beulah had in fact said at the same time that Mr. Webb was not to blame, then it might with reason be believed that respondent was not called upon to offer any explana-. tion, and no ground would have existed for any opinion on the part of the jury that Mr. Webb's silence indicated any belief or admission on his part that he had been at fault.

We are clearly of the opinion that, under the circumstances disclosed by this record, the trial court did not err in admitting testimony as to everything said by little Beulah. Appellants' counsel himself asked Mrs. Baird whether or not she heard her daughter Beulah say anything to respondent, and the witness answered, stating what she heard Beulah say. Respondent then had the right to introduce testimony as to other statements made by Beulah at the same time, concerning the accident. The jury might well have be-

lieved that Beulah's words, as testified to by her mother, should have called for some answer or explanation on the part of respondent, while, on the other hand, his silence might have appeared perfectly reasonable and natural when everything that Beulah had said in her hysterical excitement had been shown. While it is true, as above stated, that such testimony would not ordinarily be admissible, we hold that, under the circumstances here shown, the testimony, of which appellants complain, was properly received.

Appellant also assigns error upon several instructions given by the trial court. Some of these instructions might properly have been amplified by including therein phrases indicating to the jury that the instructions were applicable in case they found the existence of certain facts, but whether or not the giving thereof constituted reversible error, it is not necessary to now determine.

For error committed by the trial court in rejecting testimony as above set forth, the judgment appealed from is reversed, with instructions to the trial court to grant appellants' motion for a new trial.

MITCHELL, C. J., TOLMAN, FULLERTON, and MILLARD, JJ., concur.