[No. 40074. Department Two. January 23, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. DAVID JOSE DABA, *Appellant.**

*Reported in 450 P.2d 183.

*Irving C. Paul, Jr.,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Jeff A. Morris,* for respondent.

OTT, J.†—David Jose Daba was convicted by a jury in the Superior Court for King County of the crime of second degree murder. From entry of the judgment and sentence, predicated upon the jury's verdict, he has appealed.

At approximately 1 a.m. on April 30, 1967, Michael B. Sauntry and two companions, Robert E. Youngs and Bradford J. Williams, after consuming a number of drinks, left a bachelor party held at the Olympic Hotel in Seattle. While crossing University Plaza they passed David Jose Daba and his friend Dan Quebral walking in the opposite direction. Considerable name calling ensued, and Michael Sauntry and his friends crossed back over to the side of the street where Daba and Quebral stood. Additional insults were then exchanged. Daba produced a knife of approximately 11 inches, having a blade of 5 inches. Sauntry made a kick at Daba but failed to disarm him. Daba then backed Sauntry at the point of the knife across the street and into an alley. A scuffle ensued terminating in the stabbing of Sauntry in the stomach, from which wound he died. A parking attendant, Douglas Eaton, witnessed the scuffle and approached the two to break it up. As they parted, he saw Daba withdraw the knife from Sauntry's stomach. Daba fled, joined by Quebral, and they were apprehended a few blocks from the scene.

When Daba backed Sauntry into the alley, before any physical contact had taken place, Williams and Youngs asked Quebral to intervene and "to call his friend off."

---

†Judge Ott is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Quebral answered, "Your friend asked for it, and he is going to get stuck." At trial, over objection, the court permitted Williams and Youngs to testify as to Quebral's statement. Appellant's sole assignment of error is that the court erred in admitting into evidence this testimony under the res gestae exception to the hearsay rule.

The leading case in Washington on the res gestae exception to the hearsay rule, relied upon by both appellant and respondent, is *Beck v. Dye*, 200 Wash. 1, 92 P.2d 1113 (1939). In that case this court announced the tests for the admissibility of such evidence at 9-10:

> [T]he statement or declaration concerning which testimony is offered must, in order to make such evidence admissible, possess at least the following essential elements: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

This rule has been recently cited with approval in *State v. Shelby*, 69 Wn.2d 295, 304-05, 418 P.2d 246 (1966); *McCandless v. Inland Northwest Film Serv., Inc.*, 64 Wn.2d 523, 533, 392 P.2d 613 (1964); *May v. Wright*, 62 Wn.2d 69, 381 P.2d 601 (1963). Appellant's assignments of error relate to the alleged failure of the hearsay statement to meet the *Beck v. Dye, supra,* requirements for admissibility.

With reference to the first two requirements, appellant contends that the trial court erred in its application of the

test to the facts here presented in that the statement did not relate to the main event, nor did it explain, characterize or elucidate that event, nor was it a natural declaration growing out of the event. Appellant asserts that the main event referred to in the rule, as applied to the instant facts, was the actual penetration of the knife into the deceased, rather than the incidents occurring on the street before the main event. In support of his contention, appellant relies on *Barnett v. Bull,* 141 Wash. 139, 250 Pac. 955 (1926). In the cited case, two witnesses who had seen appellant driving his automobile more than a mile from the place of the accident had remarked to each other that appellant was driving in a reckless manner. This court held that the statement made by these witnesses should not have been admitted as part of the res gestae because it was made such a great distance from the accident and by persons who did not see the accident. The facts of the cited case are not here appropriate.

 The trial judge in the instant case analyzed the rule as it applies to the main event as follows:

> To begin with, it is my feeling that while lawyers and judges might very well break down this transaction into a number of different parts or elements, I think that the fair, practical way to look at this is that it was an entire transaction from the time Sauntry and his two friends started south across University Plaza until the assault had been committed. I think that was all one transaction.
>
> The engagement started verbally. They were hurling statements across the street at each other, and then Sauntry and his friends started across, and it was one continuous event from then on. I would call that the main event.

We agree with the trial court, that the unbroken chain of circumstances which commenced with uncomplimentary epithets followed by the drawing of a knife, the backward walk across University Plaza at the point of the knife, and the scuffle down the alley for approximately 100 feet to the place of the stabbing, all involving a period of less than 10 minutes, constituted the main event contemplated by the

rule. Quebral witnessed the entire incident up to and including the time Daba and Sauntry entered the alley, at which time he was requested to intercede and made the controversial statement. Having determined the entire encounter to be the main event, it follows that Quebral's statement was an explanation of the then continuing incident. His statement was a natural response to the request to intercede coupled with the events he had observed, both constituting part of the main event. As a friend of the assailant, Quebral made a natural statement in his friend's defense to the effect that Sauntry was the instigator and was then suffering the consequences.

■ Appellant next contends that Quebral's statement, "Your friend asked for it, and he is going to get stuck," was not one of fact but an expression of opinion and therefore did not satisfy the third requirement of the cited rule. We recognize the difficulty in determining whether a statement is one of fact or an expression of opinion. There is an element of opinion in nearly every factual statement which is an evaluation of a situation the declarant has observed. A review of the myriad of cases on this point convinces us that there can be no explicit test for determining the precise nature of such a statement, but that each statement must be evaluated within the context of surrounding circumstances giving rise to its utterance.

In order to understand the third requirement of the *Beck v. Dye, supra,* rule, it is necessary to examine the cases upon which the court based its decision in formulating that rule. In *Baird v. Webb,* 160 Wash. 157, 163, 294 Pac. 1000 (1931) this court found the hearsay statement, "Oh Mr. Webb, you have killed Margaret, . . . Oh mama, it was not Mr. Webb's fault. : . ." to be inadmissible under the res gestae exception, although admissible for other reasons. The court in *Baird,* however, gave no reasons for not allowing the statement as res gestae. In *Henry v. Seattle Elec. Co.,* 55 Wash. 444, 447, 104 Pac. 776 (1909) the court held inadmissible as res gestae the hearsay statement, "This motorman is green at the business." Likewise, in *Sullivan v.*

*Seattle Elec. Co.,* 51 Wash. 71, 75, 97 Pac. 1109 (1908) this court held inadmissible as res gestae, hearsay statements to the effect that, "it was murder . . . to let the deceased off [the streetcar] at that place." In each of these two cases, the court found that the statement was too remote in time, did not explain or was not connected with the event, and was a mere expression of opinion. Cases prior to *Beck v. Dye, supra,* in which hearsay statements were found admissible under the res gestae exception involved these statements: "My! Art, that car is coming fast!" *Heg v. Mullen,* 115 Wash. 252, 255-56, 197 Pac. 51 (1921); "What are you doing up there? You be killing some one here pretty soon, pretty nigh killed a man now." *Swanson v. Pacific Shipping Co.,* 60 Wash. 87, 95, 110 Pac. 795 (1910); and ". . . it [the train derailment] was caused by a rail, the spikes pulling out and letting the rail turn over and the spreading of the track. . . . it was a bum track." *Walters v. Spokane Int'l Ry.,* 58 Wash. 293, 297, 108 Pac. 593 (1910). In each of the preceding cases it could be argued that the statements were expressions of opinion. Nevertheless, this court held them admissible as part of the res gestae.

In formulating its rule upon the aforementioned decisions, the court in *Beck v. Dye, supra,* contemplated that, the other requirements being met, a hearsay statement would fail to qualify as one of fact, and hence be inadmissible, only if it was so clearly an expression of opinion as to have no probative value in explaining or characterizing the event described. This interpretation is supported by the court's choice of words in the rule, ". . . and not the *mere* expression of an opinion." (Italics ours.) *Beck v. Dye, supra,* at 9. In ruling on the motion for a new trial, the trial judge in the instant case similarly interpreted the rule by stating, "In other words, the prohibition is against the statement which is *nothing but opinion.*" (Italics ours.)

In order to characterize the statement in the instant case, as fact or opinion, it is necessary to consider each portion of that single statement. When asked to intercede by Saun-

try's friends, the first part of Quebral's reply was, "Your friend asked for it, . . . ." This statement, standing alone, would seem to represent a value judgment on Quebral's part based upon what he had witnessed up to that time. While this statement could well be considered one of fact by the speaker, it could just as easily be considered as his opinion by the person to whom it was said. Nevertheless, it was not clearly an expression of opinion, because it was the speaker's attempt to factually relate what he had seen. Regardless of how the statement is characterized, it can hardly be considered prejudicial to appellant. If anything, it would suggest to the jury that Sauntry was the aggressor and that Daba was provoked.

The second part of the statement, ". . . and he is going to get stuck.", although made contemporaneously with the first, is the most crucial. The entire statement was made before any physical contact between Daba and Sauntry had taken place, and would therefore seem prophetic in nature. But, can it be said to be merely an expression of opinion? Quebral took part in the verbal exchange, watched Daba draw his knife and back Sauntry across the street and into the alley, and was asked to intercede. His negative response was a reaction to what he had seen and what he was then witnessing. In his statement he was saying, in effect, "Daba is pursuing Sauntry with an open knife and with the apparent intent to inflict bodily harm." Such an evaluation is metaphorically, as *Beck v. Dye* at 10-11, suggests, "an event speaking through the person." The open knife and the pursuit was the event spoken through the person of Quebral. Considering all the cited cases with reference to the instant circumstances, we conclude that Quebral's statement satisfied the requirement of *Beck v. Dye*, at 9, that it be, "a statement of fact, and not the mere expression of an opinion."

Appellant's two remaining assignments of error, considered together, are that the statement did not meet the *Beck v. Dye,* requirements in the following respects:

D. The statement must be a spontaneous or instinctive utterance of thought, dominated or evoked by the

transaction or occurrence itself, and not the product of premeditation, reflection or design.

E. The statement must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation.

Considering the tense, explosive circumstances under which the statement was made, we conclude, as did the trial judge, that it was spontaneous and was not the product of premeditation or deliberation. We find no merit in appellant's final assignments of error.

The judgment is affirmed.

HUNTER, C. J., FINLEY, HAMILTON, and NEILL, JJ., concur.