[No. 30135.   Department One.   July 17, 1947.]

THE STATE OF WASHINGTON, *Respondent,* v. MARJORIE FOLSOM, *Appellant.*[1]

[1]Reported in 183 P. (2d) 510.

*Henry Clay Agnew,* for appellant.

*Lloyd Shorett, J. Edmund Quigley,* and *John L. Vogel,* for respondent.

MILLARD, J.—Mrs. A. P. Wrench and Marjorie Folsom were charged, as follows, by two counts in an information filed in the superior court for King county, with the crimes of abortion and manslaughter:

"They, the said Mrs. A. P. Wrench and Marjorie Folsom, and each of them, in the County of King, State of Washington, between the 11th day of March, 1946, to and including the 15th day of March, 1946, with intent thereby to produce the miscarriage of a woman, Mary Johnston, wilfully, unlawfully and feloniously did use certain drugs and instruments on the person of said Mary Johnston which at this time are not known to the Prosecuting Attorney, said acts not being then and there necessary to preserve the life of said Mary Johnston, or of the child with which she was then and there pregnant."

Trial to a jury resulted in verdicts finding the defendants guilty of the crime of abortion and the crime of manslaughter, from which verdicts only Marjorie Folsom appealed.

The facts are summarized as follows:

Mary Johnston, the deceased, and the man who was responsible for her condition went to the hospital of appellant in Seattle for the purpose of having an abortion performed on the woman, payment for which, in the amount of three hundred fifty dollars, was made by the man responsible, to Mrs. Wrench, an employee of appellant. At the time of her admission to the hospital, the health of the ailing woman was good, but the next day she was very ill. On the fourth and fifth days this lady was in the hospital, her condition continued to grow worse. March 17, 1946, Mary Johnston's lover removed Mary Johnston from appellant's hospital and took her to her apartment in Seattle. The next day, March 18, 1946, she was returned to appellant's hospital from her apartment by her husband, Roy C. Johnston, and she was transferred to the Columbus hospital, in Seattle, where an emergency operation was attempted, but without success, and the patient died on the operating table.

As is usual in this class of cases, there is testimony on behalf of appellant which, if believed by the jury, would have absolved appellant; but there is ample evidence to the contrary to sustain the verdicts.

Appellant first assigns as error the refusal of the trial court to instruct the jury to disregard argument of the prosecuting attorney that certain hearsay evidence should be considered by the jury.

The jury was instructed that, as to appellant's testimony of what deceased told her, it could only be considered as disclosing information upon which appellant acted. Appellant defended on the ground that the operation must have been performed by someone else prior to the time the deceased came to appellant's hospital. There is some evidence corroborative of this defense, to the effect that the injury to the uterus and the ilium was probably caused immediately prior to the time the deceased was admitted to appellant's hospital. On cross-examination of a witness for the state, that defense was challenged by the testimony of that witness that the deceased appeared in good health immediately prior to entering the hospital, and that, in reply to the question on cross-examination as to how long the girl had

been pregnant, to his knowledge, he stated he could not say, but she did tell him that a Dr. Patee would not take her "because she was too far along."

■■ While this testimony was hearsay and was information which the witness could not have acquired other than in conversation with the deceased, it was a direct and responsive answer to a question on cross-examination by counsel for appellant. An attempt later by the prosecuting attorney on redirect examination to have the witness repeat that hearsay, was unsuccessful, the objection of appellant's counsel thereto being sustained. No motion was made on the part of appellant to strike that part of the answer to the effect that the deceased told the witness that the physician would not take her because she was too far along, nor was any request made to charge the jury to disregard it. The inadmissibility of the testimony was waived by failure to timely object thereto and have it excluded by the jury with proper instructions; hence, it was not error for the prosecuting attorney to comment on that evidence.

■ Appellant next assigns as error the refusal of the trial court to charge the jury that mere consent or even approval, standing alone, of the commission of a crime by another, no matter how reprehensible, does not make a person guilty of such crime. We find no evidence in the record to support an instruction on aiding and abetting in so far as appellant is concerned. All the evidence is to the effect that appellant performed the operation. The only evidence indicating that anyone else performed an operation on the deceased was admitted to disclose information upon which appellant acted; that is, it was not introduced for the purpose of proving the truth of anything else the deceased said, but it was the information upon which appellant acted. The trial court's reasons for refusal to instruct the jury as requested were to the effect that such instruction could only be given on the request of Mrs. Wrench, who has not appealed.

■ Appellant also assigns as error the refusal of the trial court to instruct the jury that neither appellant nor Mrs. Wrench was accused in the information of the crime of

practicing medicine or surgery without a license, and if there were evidence of that fact, it was no concern of the jury in the case at bar, as whether the accused had been or should be charged with such offense was a question that could not be affected by any verdict rendered by the jury under the information.

Whether appellant was practicing medicine without a license, was not an issue, and, as argued by counsel for the state, to have charged the jury as requested by appellant, would mislead the jury.

"Failure or refusal to give an instruction which merely directs attention of the jury to that which every intelligent juror would know or keep in mind, without being reminded thereof, is not prejudicial or ground for reversal, nor is failure to submit or charge on an issue evidence as to which was not controverted." 24 C. J. S. 1041, § 1923.

■ Error is next assigned on refusal of the trial court to instruct the jury that, although the information charges that appellant used drugs with intent to produce a miscarriage, there is no evidence, either direct or circumstantial, upon which the jury could make such a finding. The point is well taken. The only evidence as to what inflicted the injury was the penetration of the uterus and damage to the ilium by some instrument. We find no evidence in the record that any drugs capable of producing a miscarriage were administered or prescribed. The instructions given by the court submitting to the jury the question whether the appellant supplied or administered to the deceased, or had her take any drugs or substances, was prejudicially erroneous.

By instruction No. 12, the jury was instructed that appellant was not charged with negligently performing an operation or doing any of the work in an unskillful manner, but that:

"The root of the charge is that the defendants unlawfully performed the operation and that it was not reasonably necessary that it should be performed. As to the charge of manslaughter contained in the second count of the Information, you cannot find the defendants guilty on that count of the Information unless you find beyond a reasonable doubt,

first, that they unlawfully performed the operation, and secondly, that the said Mary Johnston died as a direct and proximate result of such unlawful operation. If she died from other causes or the cause of her death is unknown, then the defendants cannot be found guilty on the second count of the Information."

Appellant excepted to the foregoing instruction, particularly the language of the second sentence,

"The root of the charge is that the defendants unlawfully performed the operation and that it was not reasonably necessary that it should be performed,"

on the ground that it is not the statutory definition of necessity and leaves it to the jury to speculate as to what, in their minds, is a reasonable necessity.

While other instructions given by the court give the statutory definition of the charge, the foregoing instruction is contradictory of the definition. The instruction ignores all elements of the statute (Rem. Rev. Stat., § 2397 [P.P.C. § 117-15]) and leaves to the jury a forming of their own opinion as to whether an operation to interrupt pregnancy is "reasonably necessary." The statute reads as follows:

"Every person who shall provide, supply or administer to a woman whether pregnant or not, or shall prescribe for or advise or procure a woman to take any medicine, drug or substance, or shall use or employ, or cause to be used or employed, any instrument or other means, with intent thereby to procure the miscarriage of a woman, unless the same is necessary to preserve her life, in case the death of the woman or of any quick child of which she is pregnant is thereby produced, shall be guilty of manslaughter." Rem. Rev. Stat., § 2397.

Nowhere do we find a definition in any of the instructions of the meaning of the phrase "reasonably necessary."

Another vice of the instruction given is that the jury is instructed that this is "the root of the charge." We agree with counsel for appellant that each fact necessary to constitute the charge is an equally essential element, and that the jury should not be instructed that any one element is the "root of the charge." In effect, this is a comment on the evidence by the court.

■ Appellant's final assignment of error has to do with certain cross-examination and rebuttal testimony permitted by the trial court. At the request of the state, the court limited the testimony given by appellant as to what the deceased had told her, and the jury was charged that they could not consider such testimony as evidence of the truth of anything said by deceased, but was only to be considered as information upon which appellant might have acted. Appellant testified that the deceased told her that some man in Dr. Patee's office had operated upon her. Of course, the only proper rebuttal which the state could have submitted was that the deceased did not say this to appellant. The state was erroneously permitted by rebuttal to attempt to prove that appellant knew Dr. Patee three months after the offense alleged in the information, and that she knew him better than she had admitted on the stand. The state sought to prove, and succeeded in bringing evidence to the attention of the jury, that appellant was performing other abortions three months after the commission of the offense with which she is charged in the case at bar. None of appellant's acts in renting Dr. Patee's office after commission of the abortion in this case was admissible as part of the state's case.

In the case at bar, the evidence on rebuttal of appellant's renting Dr. Patee's office and committing other abortions there some months after the alleged commission of the crime of abortion in the case at bar, does not tend to prove the charge of abortion and manslaughter of which appellant stands convicted. There is not a natural or obvious connection with the crimes of which she has been convicted and the acts of abortion which the state endeavored to prove on rebuttal were committed some months later. The rebuttal testimony was not necessary to prove the crimes of abortion and manslaughter, but was evidence calculated to—and no doubt did—inflame the minds of the jurors and prejudice them against the appellant.

The judgment is reversed, and the cause remanded with directions to grant a new trial.

MALLERY, C. J., SIMPSON, JEFFERS, and ABEL, JJ., concur.