[No. 2116-1. Division One. April 8, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNARD CALVIN TERRY, *Appellant.*

*Lee A. Covell* and *Brian McMahon,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Roy N. Howson* and *Lee D. Yates, Deputies,* for respondent.

SWANSON, C.J.—Kennard Calvin Terry appeals from his jury trial conviction and sentence for second-degree murder in connection with the death of 3-year-old Phillip Anholt.

The facts necessary to an understanding of this appeal are as follows: On September 11, 1972, King County police detectives, acting pursuant to a search warrant, unearthed the partially decomposed body of Phillip Anholt which had been buried under a patio in the backyard of appellant Terry's residence. Terry, who had been arrested earlier, was advised of his rights and then gave a statement to police which admitted the burial of Phillip Anholt's body but denied the intentional killing of the child. Terry's description of the circumstances of the child's death remained substantially unchanged at the time of his trial. Terry testified that in August 1972, he was living at a Burien residence with William Brown and Carol Anholt and her two children, Guy and Phillip. He indicated that he helped Carol Anholt in the care and discipline of the two boys. Terry described an incident in mid-August 1972, when Phillip wet his pants but told Terry he had not. Terry stated that he spanked the child on that occasion and confined him to his room until Phillip admitted to his mother that he had wet his pants. Terry testified that several days later, in the latter part of August, he encountered Phillip in the basement of the home and that the child again had wet his pants, and again denied doing so. Terry indicated that he was very exasperated by the child's behavior and picked him up and spanked him, and then decided to take the boy

upstairs to see his mother. Terry testified that he carried the child up the basement stairs, but set him down in order to open the door, whereupon the child fell down the stairs.

Terry stated that there was no response from the child following the fall, and described various futile efforts to revive the child. He stated that he first took the child to the garage area adjoining the basement and attempted to revive him by sprinkling water from a garden hose on him, but that had no effect, so he returned the child to the basement and laid him on a couch. He stated that at that point he heard William Brown starting to come down the stairs, and shouted to him, "Don't come down. Send Carol down." Terry said that Carol Anholt then came down to the basement and the two of them attempted artificial respiration. Terry described other unsuccessful efforts to revive the child which apparently continued for some time into the night until he realized that the child was dead. He stated that he and Mrs. Anholt discussed reporting the death to police, but both feared he would be jailed because he was in violation of the terms of his probation arising out of a prior drug charge. He testified that after another 24 hours passed, he and Carol Anholt determined that the child's body should be hidden. Terry said that he then removed several blocks from the patio back of the residence and buried the child.

The members of the jury apparently disbelieved Terry's account of the circumstances of Phillip Anholt's death because they returned a verdict finding Terry guilty of second-degree murder. On appeal, Terry assigns error first to the admission of testimony relating to certain incidents taking place prior and subsequent to Phillip Anholt's death and, second, to the admission of certain medical testimony.

The following is a summary of testimony allowed by the trial judge over the objection of appellant's counsel which forms the basis of the first assignment of error: Penelope Todd testified that in the first or second week of August 1972, at a time when she was living in a motel with the appellant's sister, Nina Cox, she saw Terry put a knife to

the throat of Nina Cox's daughter, Leah, saying that he would cut her up. She also testified that on September 9, 1972, 1 week after the time interval in which Phillip Anholt died, she was then living at a residence on Palatine Avenue North in Seattle and Terry visited her and expressed anger over the fact that Carol Anholt was showing her other son, Guy, in public the day after Terry had beaten him. William Brown testified that on several occasions he had heard Terry spanking Guy and Phillip Anholt, and afterwards had observed the children to be in a bruised condition. Brown also testified that some time after the death of Phillip Anholt he heard Carol Anholt hollering at Terry to stop choking the baby, Guy Anholt.

We direct our attention first to the admissibility of the hearsay testimony of the witness Brown to the effect that he overheard Carol Anholt shout at the appellant to stop choking Guy Anholt. Brown testified as follows on direct examination:

Q Did Mr. Terry usually do the disciplinary action or did he take the children to Carol? A Terry would. Q He did it? A Yes. Q Did Carol ever protest? A She had talked to me a few times about it. MR. McMAHON: Objection, your Honor. THE COURT: Sustain the objection. MR. COVELL: I ask it be stricken. THE COURT: Stricken. Q Did you ever hear—see or hear any incident in which she protested? A Yes. One time—MR. McMAHON: Objection, your Honor. Would you repeat the question? THE COURT: Objection overruled. Answer the question. A Yes. I remember one time I heard her downstairs hollering. MR. McMAHON: Objection, your Honor. That is hearsay also. THE COURT: Ask another question. Q Who was she hollering to? A To Terry. Q What did you hear? MR. McMAHON: Objection, your Honor. It is hearsay. What did he hear is hearsay. THE COURT: It is not offered for that purpose. Objection overruled. Proceed and answer the question. A She was—MR. McMAHON: Excuse me, your Honor—THE COURT: It is hearsay that comes in under the exception. Objection overruled. Proceed. Answer the question. A She was hollering at Terry to stop choking the baby.

It is apparent from the record that the trial judge at first refused to allow any hearsay testimony by the witness Brown, but then apparently concluded that the testimony as to the choking incident was admissible under some exception to the hearsay rule.

The state argues that Brown's hearsay testimony is admissible under the so-called res gestae rule relating to spontaneous or excited utterances. As the state points out, the leading Washington case in this area of the law remains *Beck v. Dye,* 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022 (1939), in which our state Supreme Court stated at page 9:

> A careful examination . . . will reveal that the rule as adopted, declared, and followed by this court requires that the statement or declaration concerning which testimony is offered must, in order to make such evidence admissible, possess at least the following essential elements: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

Assuming arguendo that elements (2) through (6) are satisfied by the statement here in question, the state suggests that the "main event" referred to in the first element need not be limited to the event which is the subject matter of the lawsuit, and therefore Brown's testimony could be admitted under the rule even though it related to an "event" —the alleged choking incident—other than the crime for

which the appellant was being tried. In support of this proposition, the state relies upon certain language in J. Wigmore, *Evidence* §§ 1752-53 (1940),[1] and in *State v. Canaday*, 79 Wn.2d 647, 488 P.2d 1064 (1971).

■ We are unable to accept the state's contention. The rule in Washington is that to be admissible in evidence, a spontaneous declaration or excited utterance offered through hearsay testimony must relate to the main event, meaning the subject of the lawsuit. *See generally* 5 Meisenholder, Wash. Prac. §§ 491-92 (1965), and cases cited therein. *State v. Canaday, supra,* is not to the contrary. In *Canaday*, our state Supreme Court determined that a witness' testimony that the deceased had remarked just prior to her disappearance and subsequent murder that a husky young man in a blue navy pea coat had visited her and would return, was admissible under the standards set forth in *Beck*. The state argues such testimony did not relate to the "main event," namely, the murder of the deceased; however, the court stated at page 674:

It was a remark made so close in time to Mary Bjornson's leaving her own apartment never to be seen alive thereafter by anyone who knew her *as to be part of the*

[1]J. Wigmore, *Evidence* § 1752 (1940) states in part:

"(II) Certain Spurious Limitations borrowed from the Verbal Act Doctrine. Owing to the mistaken application of the Verbal Act doctrine to cases falling properly under the present Exception, certain limitations have by some Courts been added to the foregoing legitimate ones. These may now be considered. Yet it is to be noted, once for all, that none of these have legitimately any place in the present Exception; they are improperly borrowed, by reason of a failure to perceive that the present Exception, and the Verbal Act doctrine (as already noticed in §§ 1747, 1746) are distinct domains in the law of Evidence."

J. Wigmore, *Evidence* § 1753 (1940) states in part:

"(1) There must be a Main or Principal Act. The limitation is sometimes mentioned, for cases under the Exception, that there must be a '*main*' or '*principal* act,' already relevant in the case to which the declarations relate:

" . . .

" . . . But such a limitation has no place in this Exception. What is required here is merely that there shall be some startling occurrence calculated to produce nervous excitement and spontaneous utterance (*ante*, § 1749)."

*event or occurrence for which the defendant was standing trial.* Her casual offhand comments made at a time when and under such circumstances that she could not have anticipated their significance belied the idea of deliberation, design or fabrication.

(Italics ours.) Thus, there was no intention expressed by the court in *Canaday* to make admissible spontaneous statements not related to the subject of the lawsuit. *See State v. Daba*, 75 Wn.2d 234, 450 P.2d 183 (1969).

 Under the circumstances of this case where the offered testimony not only fails to relate to the main event as defined in *Beck* and subsequent cases, but also relates merely to an event which is not established except by the hearsay testimony itself, we decline to expand the excited utterance exception to the Washington hearsay rule in the manner urged by the state. Therefore, we hold that the trial court erred in allowing the witness Brown to give hearsay testimony relating to the alleged choking of Guy Anholt by the appellant. As the court stated in *State v. Miles*, 73 Wn.2d 67, 69, 436 P.2d 198 (1968):

Far from being evidence which would show the commission of a crime, however, it is merely hearsay evidence that another crime was being planned or undertaken. Consequently it would not have been admissible even if offered for some purpose for which evidence of another crime would be properly admissible.

But, although it was incompetent to prove the matter which it asserted, it cannot be supposed that the jury was unimpressed by it.

In the case at bar, it cannot be supposed that the jury was unimpressed by the hearsay testimony in question and thus we are unable to conclude that its admission constituted harmless error. As our state Supreme Court stated in *State v. Martin*, 73 Wn.2d 616, 627, 440 P.2d 429 (1968):

When the appellate court is unable to say from the record before it whether the defendant would or would not have been convicted but for the error committed in the trial court, then the error may not be deemed harmless, and the defendant's right to a fair trial requires that the verdict be set aside and that he be granted a new trial.

*See Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969), applying the rule of *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967). Therefore, the appellant was denied a fair trial and a new trial must be ordered.

Appellant also assigns error to the trial court's admission of Brown's hearsay testimony about the alleged choking incident on the ground that it was not relevant and necessary to the state's case but, at the same time, it was highly prejudicial to the appellant, and therefore the trial court erred in failing to exclude such testimony under the rules set forth in *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952); *State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950); *State v. Folsom,* 28 Wn.2d 421, 183 P.2d 510 (1947). In view of our holding that such hearsay testimony is not admissible under the excited utterance or any other exception to the hearsay rule, we do not reach this question; however, we must resolve this question in the context of the other testimony of the witness Brown and that of the witness Todd to which appellant's counsel assigns error, because we anticipate that the admissibility of such testimony will be an issue in the new trial which we have ordered.

The rule of exclusion relied upon by the appellant is that a defendant has the right to be tried only for the offenses charged in the indictment or information and therefore evidence of other crimes or misconduct may not be admitted. A number of exceptions to this general rule have been recognized. As our state Supreme Court said in the later *Goebel* opinion at page 21:

These exceptions are to show (1) motive, (2) intent, (3) the absence of accident or mistake, (4) a common scheme or plan, or (5) identity. This list of exceptions is not necessarily exclusive, the true test being whether the evidence as to other offenses is relevant and necessary to prove an essential ingredient of the crime charged. [Citation omitted.]

Thus, evidence of other crimes or misconduct has been admitted where it reveals acts which constitute an insepar-

able part of the crime charged, *State v. Jordan,* 79 Wn.2d 480, 487 P.2d 617 (1971); *State v. Robinson,* 4 Wn. App. 515, 483 P.2d 144 (1971), or to impeach a defendant's character when he had made it an issue, *State v. Gregory,* 79 Wn.2d 637, 488 P.2d 757 (1971), or to demonstrate a defendant's "consciousness of guilt" and thereby establish his identity, *State v. Messinger,* 8 Wn. App. 829, 509 P.2d 382 (1973).

■ The true test of admissibility, however, is twofold: (1) The evidence of other offenses sought to be admitted must be relevant and necessary to prove an essential element of the crime charged, that is, as the court stated in *Messinger* at page 837, "[T]here must be a logical relationship between the . . . misconduct and the question of defendant's guilt," and (2) the relevance and necessity of the evidence must not be outweighed by its prejudice to the defendant because as was stated in *State v. Golladay,* 78 Wn.2d 121, 143, 470 P.2d 191 (1970), "[E]vidence, however competent, is rarely admissible when its relevancy is entirely engulfed by the prejudice which it may engender." Thus, it has been held to be reversible error for a trial court to admit evidence of an abortion performed by the defendant some 3 months after the abortion offense charged, *State v. Folsom, supra*; or to allow testimony concerning defendant's participation in an alleged burglary during a narcotics prosecution, *State v. Dinges,* 48 Wn.2d 152, 292 P.2d 361 (1956); or to permit a police officer to testify concerning the alleged plan of the defendants to commit a robbery similar to the one with which they were charged, *State v. Miles, supra;* or to allow the state to devote 40 percent of its evidence to establishing defendant's possession of marijuana and amphetamines in a prosecution for possession of LSD, *State v. Portrey,* 6 Wn. App. 380, 492 P.2d 1050 (1972).

In applying the foregoing principles to the case at bar, we note that the record indicates that the trial judge allowed all of the testimony here in question on the basis of

the "absence of accident or mistake" exception;[2] thus, after the state's offer of proof as to the testimony of the witness Todd, the court ruled, "This comes in on the issue of whether or not it was accidental. That is the only thing we are talking about." Moreover, it is apparent that the trial judge considered, but rejected, the argument of appellant's counsel that the relevancy of such testimony, if any, is outweighed by its inflammatory nature and the resulting prejudice to the defendant. In a case of this nature, where the defendant asserts that a child has died as a result of an accident in the absence of any intent on his part to harm the child, evidence of prior and subsequent incidents involving the defendant's treatment of children, including the deceased, may be relevant and necessary to prove an essential ingredient of the state's case. This is particularly true in the case at bar where the defendant maintained in his own testimony that his physical actions toward children, including the deceased, were limited to occasional spankings. Under such conditions, the trial court properly could find that the relevance of the testimony to the contrary outweighed any possible prejudice to the defendant.

The testimony in question was not unduly emphasized by the prosecution and therefore may not be condemned under the rule in *State v. Portrey, supra.* At the same time, the testimony did not involve incidents of misconduct patently irrelevant or remote in time to the crime charged such as

[2]The court did not specifically refer to the "absence of accident or mistake" exception when ruling upon the admissibility of the testimony of the witness Brown as to the bruised condition of Phillip and Guy Anholt, but it is implicit that the judge had that exception in mind when he overruled counsel's objection to Brown's testimony without comment. In this connection, we note that the trial judge failed to follow the procedure applicable to such testimony recommended by our state Supreme Court in the first *Goebel* opinion and reaffirmed in subsequent opinions, in that he did not advise the jury as to the limited purpose of the testimony at the time of its admission, nor did he give a cautionary instruction as to such testimony at the conclusion of the case; however, no such instructions were requested by appellant's counsel and no error is assigned to the trial judge's failure to give such instructions.

those deemed prejudicial in *Folsom, Dinges* and *Miles.* All of the incidents in question occurred within a 3- or 4-week period which included the death of Phillip Anholt. Although part of the testimony of witness Todd related to an incident which occurred subsequent in time to the crime charged, there is, just as in the cases of the prior incidents, a logical relationship between the misconduct and the appellant's guilt which the trial judge, in his discretion, properly could permit the jury to consider. *State v. Passafero,* 79 Wn.2d 495, 487 P.2d 774 (1971); *State v. Scherer,* 77 Wn.2d 345, 462 P.2d 549 (1969); *State v. Hames,* 74 Wn.2d 721, 446 P.2d 344 (1968); *State v. Murray,* 10 Wn. App. 23, 516 P.2d 517 (1973); *State v. Messinger, supra; State v. Sims,* 4 Wn. App. 188, 480 P.2d 228 (1971); *State v. Hennings,* 3 Wn. App. 483, 475 P.2d 926 (1970). Under the circumstances of this case, we are unable to conclude that the trial judge abused his discretion in allowing the jury to consider the complained of testimony; however, we do not necessarily suggest that we would have exercised such discretion in the same way were we the trial court. The question of whether the relevance of the testimony in question outweighed any prejudice to the appellant is a close one and must be answered in the context of the whole of the testimony presented at trial; where the call is close, however, we shall not second-guess the trial judge.

Appellant's second assignment of error is directed to the admissibility of certain expert testimony offered by Dr. Lovell, a pathologist called by the state. During the course of his testimony, Dr. Lovell stated on three occasions that he could not give his opinion as to the cause of Phillip Anholt's death with "reasonable medical certainty" but that he could indicate a cause of death that was "more probable than not." Despite some ambiguity in Dr. Lovell's testimony indicating that he may have been uncertain about the meaning of "reasonable medical certainty" as a legal term of art, it appears from the record that the trial court properly could conclude that the testimony offered by Dr. Lovell did, in fact, meet that standard. *See O'Donoghue*

*v. Riggs,* 73 Wn.2d 814, 440 P.2d 823 (1968); *Glazer v. Adams,* 64 Wn.2d 144, 391 P.2d 195 (1964); *Orcutt v. Spokane County,* 58 Wn.2d 846, 364 P.2d 1102 (1961); *Carpenter v. Best's Apparel, Inc.,* 4 Wn. App. 439, 481 P.2d 924 (1971). We need not resolve this question, however, because of our determination that appellant is entitled to a new trial and because we do not anticipate that the issue will arise at that trial.

The judgment of the trial court on the verdict is reversed and the cause is remanded for a new trial.

WILLIAMS and CALLOW, JJ., concur.