[No. 6999–7–II.   Division Two.   July 31, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMPSON
E. ANDERSON, *Appellant.*

*John A. Strait,* for appellant.

*Jeff M. Campiche, Prosecuting Attorney,* for respondent.

PETRICH, J.—Thompson Anderson appeals from his conviction for murder in the first degree in the killing of his wife. He argues that: (1) the not guilty by reason of insanity (NGI) statute is overbroad and violates the establishment clause of the First Amendment; (2) comments on Anderson's post–*Miranda* silence, offered to rebut the claim of insanity, were improper; (3) evidence of Anderson's prior threats to kill his wife was improperly admitted; (4) the refusal to allow defense expert witnesses to testify about hearsay statements that were the bases of their opinions was improper; and (5) misconduct by the prosecutor denied him a fair trial. We affirm.

On November 14, 1982, Raymond police dispatch received a call requesting an officer's presence at the home of Thompson and Mary Anderson. The officer was met at the door by Thompson Anderson, who led him to the kitchen. The officer asked the nature of the problem. Anderson began sobbing, and said "I'm sorry. I did it. Oh God, I'm sorry. I loved her so much." The officer asked what the problem was, and Anderson replied "Go into the bedroom and look." The officer went to the bedroom and found the body of Mary Anderson, who had been stabbed in the chest with a bayonet.

At the time of the killing, Anderson had been released on

a weekend pass from the Veterans Administration Hospital at American Lake. He had voluntarily admitted himself to the psychiatric unit at American Lake after an episode on October 11, 1982. On that date, the Raymond police arrived at the Anderson home and were told that Anderson had given Mary a shotgun and told her to shoot him. She shot out a bedroom window instead. Anderson asked to be taken to jail, but agreed to be taken to American Lake. He was being treated for alcohol dependency and paranoia. The experts who examined Anderson had different diagnoses and evaluations of his clinical condition, but all of them included some mention of paranoia.

Anderson was originally charged with second degree murder, but the charge was amended to first degree after evidence of prior threats against Mary had been obtained. At trial, Anderson did not challenge the evidence that he killed Mary. Instead, he entered a plea of not guilty by reason of insanity. A change of venue to Pierce County was granted because of pretrial publicity. Anderson presented expert testimony from a psychologist and a psychiatrist who opined that Anderson was incapable of distinguishing right from wrong when he killed Mary. The State presented testimony from three psychiatrists and a psychiatric nurse–practitioner who all opined that while Anderson had some mental illness, he was able to distinguish right from wrong. The jury rejected the plea of not guilty by reason of insanity and convicted Anderson of first degree murder.

### CONSTITUTIONALITY OF THE NGI STATUTE

Anderson claims that the not guilty by reason of insanity statute, RCW 9A.12.010, is unconstitutionally overbroad and a violation of the establishment clause of the First Amendment and of article 1, section 11 of the Washington Constitution, because *State v. Cameron,* 100 Wn.2d 520, 674 P.2d 650 (1983) allowed the use of the insanity defense when the defendant claimed he was following an order from God when he killed his stepmother, even though he knew the act was legally wrong. Anderson does not assert any

belief that a deity had told him to kill his wife. He argues that the statute is overbroad because of the *Cameron* holding, and so he may resort to hypotheticals to demonstrate the constitutional violation. *Blondheim v. State,* 84 Wn.2d 874, 876, 529 P.2d 1096 (1975). The State responds that an overbreadth challenge may only be made when a claim is made that the statute is "so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well." *Blondheim v. State,* 84 Wn.2d at 878.

Anderson contends that since RCW 9A.12.010 has been interpreted in *Cameron* to allow a belief that the defendant was following an order from God as an exception to the requirement of not knowing legal right from wrong, the use of the statute is now conditioned on a belief in an order from God, and that such a condition creates a religious distinction that is impermissible under the establishment clause. This contention has little merit. The exception in *Cameron* and *State v. Crenshaw,* 98 Wn.2d 789, 798, 659 P.2d 488 (1983) recognized that such a mentally ill person's "free will had 'been subsumed by [his] belief in the deific decree'" and that the defendant was "no less insane because he nevertheless knows murder is prohibited by the laws of man." *State v. Cameron,* 100 Wn.2d at 527. The court emphasized that the scope of the exception must be determined on a case–by–case basis. The NGI statute is not overbroad because invocation of the insanity defense is not conditioned on any activity or belief that is protected or proscribed by the First Amendment.[1]

## COMMENT ON POST–ARREST SILENCE

In rebuttal of the claim of insanity, the State offered the testimony of the arresting officer. The officer stated that he read Anderson his *Miranda* warnings; that Anderson questioned the provision that he need not make any statement, and then finally said "I don't have anything to say." During

---

[1]Anderson's claim of an equal protection violation fails on the same lack of a distinction in the operation of the statute based on religious belief.

closing arguments, the prosecutor twice stated that Anderson had shown "caginess" with the officers. The statement was offered and admitted to rebut the claim of insanity by showing that Anderson was rational enough to comprehend and invoke his *Miranda* rights at the time of the killing.

The United States Supreme Court recently held that evidence of and comments on the post–*Miranda* silence of a defendant are inadmissible to rebut a claim of insanity. *Wainwright v. Greenfield,* __ U.S. __, 88 L. Ed. 2d 623, 106 S. Ct. 634 (1986). The Court extended its *Doyle* holding that the use of post–*Miranda* silence to impeach the testimony of a defendant violated the due process clause of the Fourteenth Amendment. *See Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). The *Wainwright* opinion states:

> The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity. In both situations, the state gives warnings to protect constitutional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations, the State then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. The implicit promise, the breach, and the consequent penalty are identical in both situations.

*Wainwright v. Greenfield,* 106 S. Ct. at 639.

■ We need not decide whether the admission of the statement or the prosecutor's comments in closing argument was an error of constitutional dimension. A reviewing court should not pass on constitutional matters unless absolutely necessary to a determination of the case. *State v. Claborn,* 95 Wn.2d 629, 628 P.2d 467 (1981). When the reviewing court determines that the claimed error is harmless by the constitutional harmless error test then affirmance on that issue is in order and the court need not address the constitutional issue. *State v. Claborn, supra;*

*State v. Hall,* 95 Wn.2d 536, 627 P.2d 101 (1981).

■ The claimed error consisted of one statement and two oblique references during closing argument out of an extensive trial. The prosecutor did not focus on Anderson's silence, and it is unlikely that the argument that Anderson had been "cagey" with the officers brought the jurors' attention to an invocation of post–*Miranda* silence. The usual test for harmless constitutional error is whether there is "overwhelming untainted evidence" supporting the decision of the jury. *State v. Guloy,* 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied,* 106 S. Ct. 1208 (1986). In *Wainwright v. Greenfield,* the burden was on the state to prove sanity when the evidence raises a reasonable doubt as to the accused's sanity. However, in this state insanity is an affirmative defense for the defendant to plead and prove by a preponderance of the evidence. *State v. McDonald,* 89 Wn.2d 256, 571 P.2d 930 (1977). Because the defendant has the burden of proof, we need only determine whether there is sufficient untainted evidence to support the jury's conclusion that the defendant failed his burden. To require the State to show overwhelming untainted evidence when it does not have the burden of proof would be illogical. Here, there was substantial evidence leading to the jury's rejection of the insanity defense. None of that evidence was tainted by the testimony and comments on post–*Miranda* silence. The error here was harmless beyond a reasonable doubt.

### EVIDENCE OF PRIOR THREATS

■ Anderson challenges the admission of a statement by Mary to a police officer who responded to the October 11 incident. About 30 minutes after the incident, Mary told the officer that Anderson had held a knife to her chest and threatened to kill her. The court admitted the officer's testimony regarding Mary's statements as an excited utterance under ER 803(a)(2). Anderson claims that too much time had elapsed to allow the use of ER 803(a)(2), and that the statement did not concern the "main event of the trial," so

it could not be admitted. The test for admissibility under ER 803(a)(2) is whether "the circumstances show no opportunity for deliberation and fabrication." *State v. Schimmelpfennig*, 92 Wn.2d 95, 99, 594 P.2d 442 (1979).[2] The trial court determines whether the circumstances show an opportunity for deliberation and fabrication. *Brewer v. Copeland*, 86 Wn.2d 58, 73, 542 P.2d 445 (1975). We examine the admission of excited utterances for an abuse of discretion. *State v. Downey*, 27 Wn. App. 857, 860–61, 620 P.2d 539 (1980). The record supports the trial court's determination that Mary was still upset when she made the statement to the officer, and had not had an opportunity to deliberate or fabricate. The admission of the excited utterance was well within the court's discretion.[3]

■ He also claims that statements about the October 11 incident that he and Mary made during a meeting at American Lake were inadmissible because they were made in a "family therapy" session and were therefore within the statutory physician–patient privilege. The session included Anderson, Mary, a staff psychiatrist, a social worker, and Mary's son, who testified to the statements. A privilege may be waived by the presence of third parties, depending on the reason for their presence. A police guard present during an examination was deemed an agent of the physician, thus the physician–patient privilege was not waived in *State v. Gibson*, 3 Wn. App. 596, 600, 476 P.2d 727 (1970), *review denied*, 78 Wn.2d 996 (1971). The record does not disclose the necessity of the son's presence. Further, when an insanity defense is raised, both the privilege against self-

---

[2] A delay of 30 to 40 minutes was held to fall outside the rule, but the court noted that the declarant "had an opportunity to calm down and reflect on the events". *Brown v. Spokane Cy. Fire Protec. Dist. 1*, 100 Wn.2d 188, 195, 668 P.2d 571 (1983).

[3] Under the res gestae exception that preceded the evidence rules, excited utterances could only be admitted if related to the "main event" of the case. *State v. Terry*, 10 Wn. App. 874, 879, 520 P.2d 1397 (1974). This requirement was superseded by adoption of the rules. *See* 5A K. Tegland, Wash. Prac., *Evidence* § 361 (2d ed. 1982).

incrimination and the attorney–client privilege are considered waived for communications between the defendant and a defense psychiatrist. *State v. Jones,* 99 Wn.2d 735, 749–50, 664 P.2d 1216 (1983). Full disclosure of evidence relevant to insanity was held to outweigh the benefits of the privileges. *State v. Jones, supra; State v. Bonds,* 98 Wn.2d 1, 21–22, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983). The same rationale supports waiver of the physician–patient privilege. We conclude that the privilege was waived both by the presence of a third party and by the invocation of an insanity defense.

Finally, Anderson claims that the evidence of the prior threats should have been excluded because hearsay evidence of prior statements and action is inadmissible to show the state of mind of the defendant or to show premeditation. *State v. Parr,* 93 Wn.2d 95, 606 P.2d 263 (1980). In *Parr,* the trial court admitted the victim's hearsay statements under the exception for a then–existing mental condition ("state of mind exception"), ER 803(a)(3). In this case, the statements made by Mary and Anderson were not hearsay. They were admissions of a party–opponent under ER 801(d)(2). Mary's son testified that after Mary recounted the episode in which Anderson stood over her with a knife, making cross marks over her chest, the psychiatrist asked Anderson whether this was true. Anderson shook his head yes. A statement is not hearsay when it is "offered against a party and is (i) his own statement, . . . or (ii) a statement of which he has manifested his adoption or belief in its truth . . ." ER 801(d)(2). Anderson manifested his adoption of Mary's statement. Therefore, it was not hearsay and was admissible.[4]

Anderson asserts that the prejudicial effect of admitting the evidence of prior threats outweighed its pro-

---

[4]Anderson also claims that the admission of a party opponent under ER 801(d)(2) must be a declaration that is · inconsistent with his position at trial. While the hearsay exception for statements against interest, ER 804(b)(3), requires an inconsistent declaration, there is no such requirement for admissions under ER 801(d)(2).

bative value. The trial court's rulings on relevance and prejudicial effect under ER 402 and 403 should only be reversed for an abuse of discretion. *Lee v. Sauvage,* 38 Wn. App. 699, 709, 689 P.2d 404 (1984). There was no abuse of discretion.[5]

### ADMISSIBILITY OF STATEMENTS UNDERLYING EXPERT OPINIONS

■ Anderson contends that the court improperly sustained hearsay objections to his attempts to have the defense expert witnesses testify to statements he made during their evaluations of his mental condition. The statements were offered to explain the facts underlying their opinions as to his mental state. He claims that the court erred further in allowing the State's experts to testify to his statements. He argues that the statements he made to the defense experts should have been admitted under ER 703. ER 703 allows experts to base an opinion on facts or data that are not admissible in evidence, but does not address the admission of the facts on which the expert relies. ER 705 addresses the disclosure of the underlying facts, which may be required either by the court or the cross examiner. Tegland notes that courts have been reluctant to allow the use of ER 705 as a mechanism for admitting otherwise inadmissible evidence as an explanation of the expert's opinion. 5A K. Tegland, Wash. Prac. § 312 (2d ed. 1982). We agree and conclude that ER 705 does not provide such a mechanism to avoid the rules for admissibility of evidence.

Anderson's statements to the State's experts were admitted either as admissions under ER 801(d)(2) or as statements not offered to prove the truth of the matter asserted. The defense made no attempt to use any exception to the

---

[5]Anderson concludes by contending that the admission of the testimony violated his right to confrontation under article 1, section 22 of the state constitution. This contention does not appear to have been raised below and is not supported by argument here. We need not consider such "naked castings into the constitutional sea". *In re Rosier,* 105 Wn.2d 606, 616, 717 P.2d 1353 (1986).

hearsay rules to bring in the statements made to its experts. The admission or refusal of evidence lies largely within the sound discretion of the trial court. *Maehren v. Seattle,* 92 Wn.2d 480, 488, 599 P.2d 1255 (1979), *cert. denied,* 452 U.S. 938, 69 L. Ed. 2d 951, 101 S. Ct. 3079 (1981). There was no abuse of discretion regarding the statements underlying the expert opinions.

## PROSECUTORIAL MISCONDUCT

Finally, Anderson claims that his right to a fair trial was denied by the cumulative effect of misconduct by the prosecutor. He claims that the prosecutor: (1) violated motions in limine by attempting to bring in evidence and testimony that was excluded under the motion; (2) violated a stipulation to exclude mention of the circumstances of the discovery of notes on self–improvement and paranoia that Anderson had and which were missing until midtrial; and (3) made a number of "combative, aggressive and inappropriate comments." The standard for measuring misconduct is whether the remarks prejudiced the jury and thereby denied the defendant his right to a fair trial. *State v. Weber,* 99 Wn.2d 158, 165, 659 P.2d 1102 (1983), citing *Smith v. Phillips,* 455 U.S. 209, 71 L. Ed. 2d 78, 102 S. Ct. 940 (1982). The court is to consider the seriousness of the irregular remarks, the possibility of the remarks influencing the jury, and the opportunity to cure the irregularities by instructing the jury to disregard them. *State v. Weber,* 99 Wn.2d at 165–66. After a thorough review of the record, it is clear that many improper statements were made by both the prosecutor and the defense counsel. However, most of them were made outside the presence of the jury. Of those that the jury heard, most were cured by instructions to disregard given by the trial judge. The remaining misconduct does not appear to have had an effect on the fairness of the trial. The closing argument by the prosecutor did not contain the sort of attacks on the defense counsel, disparagement of the defendant, and introduction of personal opinion that resulted in reversal in *State v. Reed,* 102

Wn.2d 140, 684 P.2d 699 (1984). The conduct of both the prosecution and the defense were not models of appropriate courtroom behavior. They were at times unprofessional and discourteous to the judge, to the jury, and to each other. Nevertheless, their conduct did not affect the fairness of the trial and does not warrant a reversal.

Affirmed.

WORSWICK, C.J., and REED, J., concur.

Reconsideration denied September 4, 1986.

Review granted by Supreme Court December 2, 1986.

Review dismissed as moot March 4, 1987.